6 N.J. Super. 306 (1950)
71 A.2d 201
COMO FARMS, INC., A NEW JERSEY CORPORATION, ET AL., PETITIONERS,
v.
ARTHUR F. FORAN, DIRECTOR, OFFICE OF MILK INDUSTRY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1949.
Decided February 3, 1950.
*309 Before Judges JACOBS, DONGES and BIGELOW.
Mr. Herbert J. Hannoch argued the cause for the petitioners (Messrs. Hannoch & Lasser, attorneys).
Mr. Joseph Lanigan argued the cause for the defendant (Mr. Theodore D. Parsons, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by JACOBS, S.J.A.D.
The petitioners in this proceeding seek a determination that the Milk Control Act of 1941 (P.L. 1941, c. 274) and the Reorganization Act of 1948 (P.L. 1948, c. 447), which constituted the Department of Agriculture as a principal department in the executive branch of the State Government and transferred milk control functions to *310 the Office of Milk Industry within that Department, are unconstitutional.
In August, 1949, the petitioner, Como Farms, Inc., a dealer engaged in the business of buying and selling milk in New Jersey, filed a petition in the Appellate Division for declaratory judgment under Rule 3:81-10, setting forth that the Director of the Office of Milk Industry, acting pursuant to P.L. 1941, c. 274 and P.L. 1948, c. 447, had by order number 48-8 suspended minimum prices to consumers, by orders numbers 49-5 and 6 altered minimum prices payable to producers, and by regulations numbers F 13 to 17, inclusive, imposed restrictions on its business operations, and alleging that the statutes are unconstitutional and the orders and regulations are invalid. Thereafter the Director of the Office of Milk Industry filed his answer which did not question the procedure, admitted the promulgation of the orders and regulations and asserted their validity and the constitutionality of the statutes. In September, 1949, the Port Murray Dairy Co. and other dealers who had taken separate appeals to review the validity of the orders and regulations were permitted to intervene in support of the petition by Como Farms, Inc., and, in accordance with Rule 3:81-11, additional evidence was taken before the Office of Milk Industry and has been made part of the record before this Court.
The petitioners in this proceeding have expressly confined themselves to an attack on the constitutionality of P.L. 1941, c. 274 and P.L. 1948, c. 447, leaving other issues for determination on the appeals by the Port Murray Dairy Co., et al. Accordingly, this opinion will restrict itself to the petitioners' contentions (1) that the Milk Control Act of 1941 (P.L. 1941, c. 274) is unconstitutional because (a) it delegated power without a sufficient legislative standard, and (b) the emergency which caused its passage has terminated, and (2) that the Reorganization Act of 1948 (P.L. 1948, c. 447) is unconstitutional because (a) its title violated Article IV, Section VII, paragraph 4 of the Constitution of 1947 which provides that every law shall embrace but one object expressed in its title and (b) it embodied procedural *311 provisions for judicial review of administrative decision or action which infringe upon the Supreme Court's rule-making powers and the right to trial by jury.

I.

THE MILK CONTROL ACT OF 1941.

A. The Sufficiency of the Legislative Standard.
In the oft cited case of State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935), the Court of Errors and Appeals held that the milk business was affected with a public interest and was subject to regulation either by the Legislature or by an administrative agency acting pursuant to a valid delegation of power from the Legislature. The delegation to be valid must be accompanied by a sufficient basic standard (Van Riper v. Traffic Telephone Workers Federation of New Jersey, 2 N.J. 335, 353 (1949)), but the Court readily sustained the general standard found in the Milk Control Act of 1933 (P.L. 1933, c. 169, p. 357). The petitioners contend that the Newark Milk case may be distinguished on the ground that, unlike the earlier statute, paragraph 22 of the 1941 Act provides that the Director in fixing prices "may," rather than "shall," take into consideration the various grades of milk produced, the varying percentages of butter fat, etc. Where, as here, the public interest so demands, and no clear legislative intent to the contrary appears from the context of the Act, the language used may be construed as mandatory. See Clark v. Elizabeth, 61 N.J.L. 565, 581 (E. & A. 1898); Fagan v. Hoboken, 85 N.J.L. 297, 299 (E. & A. 1913). Indeed, in B.R. Waldron & Sons Co. v. Milk Control Board, 131 N.J.L. 267, 270 (Sup. Ct. 1944), affirmed, 131 N.J.L. 388 (E. & A. 1944), the former Supreme Court in paraphrasing the 1941 Act interpreted paragraph 22 as imposing "a duty to consider" the elements enumerated therein.
Furthermore, we are satisfied that, independent of paragraph 22, the 1941 Act does not vest unbridled power in *312 the Director but, on the contrary, embodies a legally sufficient standard to guide him. Paragraph 21 expressly authorizes the Director to take such measures including the fixing of prices and the promulgation of regulations as may be "necessary to control or prevent unfair, unjust, destructive or demoralizing practices which are likely to result in the demoralization of agricultural interests in this State engaged in the production of milk or interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State." The same standard is clearly expressed elsewhere in the Act (see, e.g., the Preamble and paragraph 28) and although it is general in nature it is no more so than similar standards in other enactments approved by our state and federal courts. Thus the Board of Public Utility Commissioners has been guided simply by the standard of "public convenience and necessity" (see, e.g., R.S. 48:11-1; Fornarotto v. Board of Public Utility Commissioners, 105 N.J.L. 28, 32 (Sup. Ct. 1928)), and the Commissioner of Alcoholic Beverage Control with authority to fix prices and promulgate regulations (Gaine v. Burnett, 122 N.J.L. 39 (Sup. Ct. 1939); affirmed, 123 N.J.L. 317 (E. & A. 1939)), has been guided by the legislative pronouncement that the statute shall be administered in "such a manner as to promote temperance and eliminate the racketeer and bootlegger" (R.S. 33:1-3, 39).
Standards embodied in federal enactments and approved by the Supreme Court of the United States are of similar breadth. See American Power & Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 105, 91 L.Ed. 103, 115 (1946); Lichter v. United States, 334 U.S. 742, 786, 92 L.Ed. 1694, 1726 (1948). In the Lichter case the Court, in sustaining an "excessive profits" standard listed other general standards which have been held adequate including "just and reasonable" (Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 600, 88 L.Ed. 333, 344 (1944)). prices yielding a "fair return" (Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 397, 84 L.Ed. 1263, 1273 (1940)), and "unfair methods of competition" (Federal *313 Trade Commission v. Keppel & Bro., 291 U.S. 304, 311, 78 L.Ed. 814, 819 (1934)).
The petitioners have advanced the additional contention that although the Legislature may vest in the Director the power to prescribe the specific price to be paid for milk it may, nevertheless, not leave to his judgment the determination of whether or not there shall be any price fixing. We find no merit in this contention. One of the primary public advantages of the administrative process is the flexibility it affords by enabling the administrator to adopt, modify, or repeal regulations expeditiously as the need becomes evident. In this regard regulations fixing prices are not to be differentiated from other regulations which are equally legislative in nature. See State Board of Milk Control v. Newark Milk Co., supra, and Gaine v. Burnett, supra, where our Courts expressly sustained statutes empowering, as does paragraph 21 of the 1941 Milk Control Act, the adoption, in the exercise of the administrator's judgment within the statutory standard, of regulations on divers subjects including the fixing of prices. See also Rieck-McJunkin Dairy Co. v. Milk Control Commission, 341 Pa. 153, 18 A.2d 868 (Sup. Ct. 1941).
We are satisfied that the petitioners' attack on the delegation of power and the adequacy of the standards in the 1941 Act must fail.

B. The Alleged Termination of the Emergency.
When the Legislature enacted the 1941 Act it found that an emergency existed affecting the milk industry and provided in paragraph 52 that the Act shall remain effective until the Legislature declares that the emergency no longer exists and terminates its operation. The Legislature has made no such declaration and has not terminated the operation of the Act; on the contrary, by its passage of P.L. 1948, c. 447, it continued milk control and transferred it to the Office of Milk Industry in the Department of Agriculture.
The petitioners contend, nevertheless, that this Court may declare the end of the emergency and the effectiveness of the Act, citing Hourigan v. North Bergen Township, *314 113 N.J.L. 143, 151 (E. & A. 1934), where the Court stated that a law dependent upon the existence of an emergency for its validity may cease to operate when the emergency passes and the Court so determines. It may be doubted whether the doctrine of the Hourigan case would be applicable to milk control legislation generally, the constitutional validity of which presumably would not rest upon the existence of a temporary emergency but on the fact that the business is now "affected with a public interest warranting price and marketing regulation." B.R. Waldron & Sons Co. v. Milk Control Board, supra. See also Veix v. Sixth Ward Building and Loan Association of Newark, 310 U.S. 32, 39, 84 L.Ed. 1061, 1066 (1940). In any event, there is no affirmative evidence whatever in the record before us which would justify the conclusion that the emergency declared by the Legislature in 1941 and reaffirmed in 1948 has ceased to exist. The legislative declaration of emergency is entitled to be respected in the absence of contrary proof and the fact that such emergency as may currently exist in the field of milk control may be different in kind from that presented in 1941 is not significant. See East New York Savings Bank v. Hahn, 326 U.S. 230, 235, 90 L.Ed. 34, 38 (1945); Block v. Hirsh, 256 U.S. 135, 154, 65 L.Ed. 865, 870 (1921). We have concluded that the Milk Control Act of 1941, as modified by P.L. 1948, c. 447, remains in effect.

II.

THE REORGANIZATION ACT OF 1948.

A. The Title of the Act.
The Constitution of 1947 directed that all executive and administrative departments be allocated within not more than twenty principal departments "in such manner as to group the same according to major purposes so far as practicable." Article V, Section IV, paragraph 1. In compliance with this mandate the Legislature in 1948 adopted various reorganization acts which created principal departments and allocated *315 the numerous pre-existing agencies to these departments according to their major purposes so far as practicable. See, e.g., P.L. 1948, cc. 82, 88, 89, 90, 91, 92, 439, 444, 445, 446, 447, 448. Each of these acts bore a title which in substantial effect stated that it was an act relating to the reorganization of the executive and administrative departments, constituted the principal department therein named and amended and supplemented earlier legislation. Thus P.L. 1948, c. 439, in its title refers to the establishment of the Department of Law and Safety as a principal department and, in its body, transfers, inter alia, the functions of the Commissioner of Alcoholic Beverage Control to that department. Similarly, P.L. 1948, c. 447, in its title designates that it is a reorganization act constituting the Department of Agriculture as a principal department and, in its body, transfers the functions of the Director of Milk Control to the Office of Milk Industry, a division of that department.
It seems to us that the object expressed in the reorganization act of P.L. 1948, c. 447, fairly and adequately gave "notice of the effect of the legislation to one conversant with the existing state of the law." Sawter v. Shoenthal, 83 N.J.L. 499, 501 (E. & A. 1912). It was not necessary that the title abstract the contents of the legislation; it was sufficient for it to express, as it did, its "`leading' or general subject." Public Service Electric and Gas Co. v. Camden, 118 N.J.L. 245, 248 (Sup. Ct. 1937); Jersey City v. Martin, 126 N.J.L. 353, 363 (E. & A. 1941). Having appropriately expressed its general subject it could properly include incidental and reasonably related matters. Public Service Electric and Gas Co. v. Camden, supra, at p. 249. Cf. State v. Czarnicki, 124 N.J.L. 43, 45 (Sup. Ct. 1940). We are of the opinion that within the principles expressed in the cited authorities the inclusion in the Act of the provisions transferring the milk control functions to the Office of Milk Industry, a division of the Department of Agriculture, and setting forth procedure for judicial review of its determinations was not in violation of Article IV, Section VII, paragraph 4 of the Constitution of 1947.

*316 B. The Procedural Provisions for Judicial Review.
When P.L. 1948, c. 447, was first introduced on March 22, 1948, as Senate No. 16 it contained no provisions relating to judicial review of determinations by the Office of Milk Control. On June 21, 1948, the Supreme Court announced its Court Rules which embodied in Rule 3:81 the method of reviewing by appeal, in lieu of prerogative writ proceedings formerly available, the final decision or action of any State administrative agency. Thereafter on August 16, 1948, a committee substitute for Senate No. 16 embodying the provisions relating to judicial review was adopted and now appears as P.L. 1948, c. 447. Examination of these provisions discloses a general legislative intent to conform primarily with the Supreme Court's Rules. Thus, paragraph 14 provides that orders of the Director of the Office of Milk Industry shall be reviewable by appeal to the Appellate Division (Rule 3:81-8); paragraph 16 provides for the filing of the record of the proceeding and its shortening by stipulation (Rule 3:81-8); paragraph 17 provides for application to the Appellate Division for the taking of additional evidence (Rule 3:81-9); and paragraph 18 provides that the appeal shall proceed before the Appellate Division in accordance with its Rules. It is true, as the petitioners stress, that the Act contains procedural provisions in paragraphs 14 and 18 which depart from the Rules. Paragraph 14 provides that the appeal shall be taken within ten days in contrast to Rule 1:2-5 which permits appeals from final agency decisions within thirty days; and paragraph 18 provides that with respect to factual determinations the Court shall reverse where unsupported by substantial evidence whereas Rule 3:81-13 provides that the Court shall have power to review the facts. The petitioners' contention is that these statutory provisions constitute an unconstitutional impairment of the power granted to the Supreme Court by Article VI, Section V, paragraph 4 which supersedes prerogative writs and provides that, in lieu thereof, review, hearing and relief shall be afforded in the manner provided by Rules of the Supreme Court.
We accept the view, urged by petitioners and not *317 opposed by defendant, that although the Constitution and the Rules of the Supreme Court have superseded writs as such, the comprehensive prerogative writ jurisdiction of the former Supreme Court to review official action is fully vested in the Superior Court and may not be withdrawn by the Legislature. Cf. Ward v. Keenan, 3 N.J. 298 (1949); Report of Committee on Judiciary, Convention of 1947, p. 21. Furthermore, we shall assume, for present purposes, the soundness of the petitioners' contention that the power to promulgate Rules governing procedure in lieu of prerogative writs, having been granted to the Court by Article VI, Section V, paragraph 4 in unqualified terms (Cf. Article VI, Section II, paragraph 3; Winberry v. Salisbury, 5 N.J. Super. 30, 33 (App. Div. 1949)), is supreme and may not be impaired by legislative action. Nevertheless, we do not believe that the petitioners are entitled to the declaration, which they seek, that the 1948 reorganization act is unconstitutional in toto because of its procedural provisions relating to judicial review.
In the first place, we consider them merely incidental to and severable from the basic and substantive provisions of the 1948 reorganization act which constituted the Department of Agriculture as a principal department and transferred milk control functions to one of its divisions. Cf. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949). In the second place, petitioners have not been affected by them and, for purposes of this declaratory judgment proceeding (Borchard, Declaratory Judgments (2d Ed. 1941) p. 50), they might well be permitted to stand as expressions of legislative policy within the decisions of our Courts which took cognizance of similar statutory provisions notwithstanding the acknowledged inviolability of the Court's paramount power, procedurally and substantively, over its prerogative writ jurisdiction. See Owen v. Atlantic City, 125 N.J.L. 145, 147 (Sup. Ct. 1940); Rahway Valley Railroad Co. v. Board of Public Utility Commissioners, 127 N.J.L. 164, 167 (Sup. Ct. 1941). Cf. National Dairy Products Co. v. Milk Control Board, 133 N.J.L. 491, 494 (Sup. Ct. 1945); Elizabeth v. New Jersey Jockey Club, 63 N.J.L. 515 (Sup. Ct. 1899).
*318 Petitioners have stressed, and we recognize, the wisdom of the Convention's action, as implemented by the Court's Rules, in furnishing a simple, certain and readily available method of review applicable to all administrative agencies and that legislative action in the same field may ordinarily be undesirable. On the other hand, the Legislature may believe, when dealing with a particular field which is subject to administrative regulation, that protection of the public and fulfillment of proper legislative purposes require that any appeal being taken shall be instituted promptly and that any judicial review of the administrator's fact findings in his exercise of delegated legislative powers, be limited rather than de novo. In such event might not the Legislature remain free, as heretofore, thus to express itself in the reasonable exercise of its coordinate governmental responsibilities, as it has in P.L. 1948, c. 447, and in many earlier legislative enactments. See, e.g., R.S. 48:2-43, 46. It may be noted that decisions rendered since the adoption of the new Rules have given recognition to similar legislative policies relating to review of action by administrative agencies. Cf. Marrocco v. Board of Adjustment of City of Passaic, 5 N.J. Super. 94 (App. Div. 1949), certif. den., 3 N.J. 379 (1949); New Jersey Power and Light Co. v. Borough of Butler, 4 N.J. Super. 270 (App. Div. 1949); Adams v. Borough of River Edge, 5 N.J. Super. 28 (App. Div. 1949); Boulevard Improvement Co. v. Academy Associates, 3 N.J. Super. 506 (Law Div. 1949).
The final point for consideration is petitioners' contention that paragraph 18 of P.L. 1948, c. 447, by providing that the appeal to the Appellate Division shall be conducted by it without a jury violates the 1947 constitutional provision that the right of trial by jury shall remain inviolate. We consider this contention to be without substance. Prior to the adoption of the 1947 Constitution the petitioners had no right to trial by jury on review of milk control orders and determinations affecting them; such orders and determinations, including license refusals which were not ministerial acts, despite petitioners' contrary suggestion (P.L. 1941, *319 c. 274, p. 727), were reviewable, on certiorari, without a jury. P.L. 1941, c. 274, p. 719. Indeed, the Rules of the Supreme Court relating to review of action by State administrative agencies, which are not questioned by the petitioners, provide for appeal to the Appellate Division which is admittedly conducted without a jury. See Rule 3:81-8. Cf. Cox v. United States, 332 U.S. 442, 453, 92 L.Ed. 59, 69 (1947), reh. den., 333 U.S. 830, 92 L.Ed. 1115 (1948); State Board of Milk Control v. Newark Milk Co., supra, at p. 514.
Without passing upon the issue of whether the procedural provisions in P.L. 1948, c. 447, relating to judicial review of determinations by the Director of the Office of Milk Industry, will be given any binding or other effect on an appeal by a person aggrieved by them, we are satisfied that the petitioners are not entitled to a declaration in this proceeding that they are in violation of the Constitution of 1947.
The petition is dismissed.