# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0837-17T2
A-0881-17T2

IN THE MATTER OF S.H.

_____

IN THE MATTER OF D.M.

_____

Argued January 14, 2019 – Decided January 29, 2019

Before Judges Sabatino, Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. MNCC-00107017; and Camden County, Docket No. CASC-1029-17.

Carol J. Sands, Assistant Deputy Public Defender, argued the cause for appellant S.H. (Joseph E. Krakora, Public Defender, attorney; Carol J. Sands, of counsel and on the briefs).

Stanley M. Shur, Assistant Deputy Public Defender, argued the cause for appellant D.M. (Joseph E. Krakora, Public Defender, attorney; Stanley M. Shur, of counsel and on the briefs).

Anne E. Walters, Assistant County Counsel, argued the cause for respondent State of New Jersey (Christopher A. Orlando, Camden County Counsel, attorney; Anne E. Walters, on the briefs).

PER CURIAM

In these back-to-back appeals, which we now consolidate for purposes of this opinion, appellants S.H. and D.M. seek review of the September 12, 2017 civil commitment orders that continued their involuntary inpatient commitments pending referral to the Involuntary Outpatient Commitment (IOC) program for evaluation. Appellants contend that deficiencies in the proceedings that resulted in these orders denied them substantive and procedural due process. Our review of the record in light of these contentions satisfies us that the September 12 orders must be reversed.[1]

I.

We begin by summarizing the well-established legal principles that govern our review. "The case for involuntary commitment must be presented by County Counsel [(the county)]." In re Commitment of Raymond S., 263 N.J.

---

[1] In light of this determination, and for the reasons discussed at the end of this opinion, we do not address appellants' additional assertion that two informational memoranda prepared by the Administrative Office of the Courts concerning the conversion of patients from inpatient to outpatient involuntary commitment programs should be invalidated or modified.

Super. 428, 432 (App. Div. 1993). If a "court finds that there is probable cause to believe that [a] person . . . is in need to involuntary commitment to treatment," the court "shall issue a temporary order authorizing the assignment of the person to an outpatient treatment provider or the admission to or retention of the person in the custody of the facility[.]" N.J.S.A. 30:4-27.10(g); see also R. 4:74-7(c). The court must ensure that the placement "is both appropriate to the person's condition and is the least restrictive environment, pending a final hearing." Ibid.

"[O]ur Legislature and the New Jersey Supreme Court have promulgated statutes and rules to ensure that no person is involuntarily committed . . . without having been afforded procedural and substantive due process." In re Commitment of T.J., 401 N.J. Super. 111, 119 (App. Div. 2008) (first alteration in original) (quoting Raymond S., 263 N.J. Super. at 431). Thus, to continue an individual's involuntary inpatient or outpatient commitment after a temporary commitment order, a court must find "by clear and convincing evidence presented at [a] hearing that the patient is in need of continued involuntary commitment" to treatment. R. 4:74-7(f)(1). The Legislature had defined this to mean

> that an adult with mental illness, whose mental illness
> causes the person to be dangerous to self or dangerous
> to others or property and who is unwilling to accept
> appropriate treatment voluntarily after it has been

A-0837-17T2

offered, needs outpatient treatment or inpatient care at a short-term care or psychiatric facility or special psychiatric hospital because other services are not appropriate or available to meet the person's mental health care needs.

[N.J.S.A. 30:4-27.2(m).]

At the hearing to determine whether a commitment should be continued, the individual has the following legislatively-prescribed rights:

a. The right to be represented by counsel or, if indigent, by appointed counsel;

b. The right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present;

c. The right to present evidence;

d. The right to cross[-]examine witnesses;[2] and

e. The right to a hearing in camera.

[N.J.S.A. 30:4-27.14.]

Rule 4:74-7(e) specifically provides that "[n]o final order of commitment to treatment shall be entered except upon hearing conducted in accordance with

---

[2] The importance of the right of cross-examination cannot be understated. "It has long been held that cross-examination is the 'greatest legal engine ever invented for the discovery of the truth.'" State ex rel J.A., 195 N.J. 324, 342 (2008) (quoting California v. Green, 399 U.S. 149, 158 (1970)).

the provisions of these rules."  In addition to the requirements set forth in N.J.S.A. 30:4-27.14, Rule 4:74-7(e) mandates that the county's application to commit an individual to treatment "shall be supported by the oral testimony of a psychiatrist on the patient's treatment team who has conducted a personal examination of the patient as close to the court hearing date as possible, but in no event more than five calendar days prior to the court hearing."  Any expert witness called to testify at the hearing must "prepare a written report and shall make it available to the court and all counsel no later than one business day prior to the hearing."  Ibid.

As we made clear over twenty-five years ago, "[t]hese procedural and substantive standards must be scrupulously followed."  Raymond S., 263 N.J. at 432.  Indeed, our Supreme Court has noted that Rule 4:74-7 was adopted "in order to correct a long standing history of procedural abuses in the civil commitment process and to ensure that no person may be involuntarily committed . . . without having been afforded full procedural due process."  In re D.C., 146 N.J. 31, 43 (1996) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:74-7 (1995)).  The Court further stated

> that the adoption of the rule reflects an increasing concern for the mentally ill and a "growing realization that, traditionally, persons alleged to be suffering from mental illness have been committed on ex parte orders

entered without representation of counsel, without adequate notice, without adequate proofs and in general violation of the most fundamental concepts of due process."

[Ibid. (quoting Pressler & Verniero, cmt. 1 on R. 4:74-7 (1995)).]

At the conclusion of the hearing, the trial judge "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury[.]" R. 1:7-4(a). While a judge need not author a lengthy written opinion, or deliver an hour-long oral ruling to meet this requirement in every case, he or she must always state what facts form the basis of his or her decision, and then weigh and evaluate those facts in light of the governing law "to reach whatever conclusion may logically flow from" those facts. Slutsky v. Slutsky, 451 N.J. Super. 332, 357 (App. Div. 2017). Because justice requires no less, "[a]ll conclusions must be supported." Ibid.

In addressing the critical need for meticulous fact finding in the context of commitment hearings, we have observed that the "[o]mission of this duty is particularly problematic where the decision is discretionary; without findings relevant to the legal standards the litigants and the reviewing court 'can only speculate about the reasons' for the decision." In re Commitment of M.M., 384

6

N.J. Super. 313, 332 (App. Div. 2006) (quoting Rosenberg v. Bunce, 214 N.J. Super. 300, 304 (App. Div. 1986)).  Accordingly,

> [t]he importance of the individual and public interests implicated by civil commitment "demonstrate the particular necessity . . . for the trial judge to comply assiduously with the mandate of . . . [the] myriad [of] cases pointing out the importance of findings." In re Commitment of S.D., 212 N.J. Super. 211, 218-19 (App. Div. 1986).  A judge presiding over a commitment hearing is vested with extraordinary responsibility; when the judge does not apply the legal standards and find the relevant facts, our subsequent correction of the abuse of discretion is a poor remedy for the ill.
>
> [M.M., 384 N.J. Super. at 332-33 (alterations in original).]

"Under the civil commitment law, a hearing is an evidence-gathering proceeding." In re Commitment of B.L., 346 N.J. Super. 285, 307 (App. Div. 2002) (citing N.J.S.A. 30:4-27.14).  Thus, all the formalities attendant to hearings conducted by our courts apply equally to commitment hearings conducted under Rule 4:74-7.  "As such, witnesses must be sworn, particularly the psychiatrists.  Without swearing in the witnesses, there are no proofs presented at the hearing.  Due process requires that a court must have proofs, 'which lead to the decision[.]'"  B.L., 346 N.J. Super. at 307 (alteration in original) (quoting Callen v. Gill, 7 N.J. 312, 319 (1951)).

A-0837-17T2

In addition, Rule 1:2-3 provides that "[t]he verbatim record of the proceedings shall include references to all exhibits and, as to each, the offering party, a short description of the exhibit stated by the offering party or the court, and the marking directed by the court." We have said that "the trial judge has the ultimate responsibility of conducting adjudicative proceedings in a manner that complies with required formality in the taking of evidence and the rendering of findings." N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002) (criticizing, among other things, the trial judge's review and consideration of documents "without any identification for the record"). The failure to adequately identify documents for the record "not only violate[s] basic rules of trial practice, R. 1:2-3, but inhibit[s] the appellate process by depriving the appellate court of a complete record on appeal." Ibid.

II.

Unfortunately, appellants did not receive these required procedural protections, and we now highlight the deficiencies in each of their respective hearings.

A-0837-17T2

### A.    S.H.'s Hearing

On August 18, 2017, S.H. was temporarily committed on an inpatient basis at CentraState Medical Center.  After an initial hearing, this commitment was continued on August 30, 2017.

S.H. was then transferred to Northbrook Behavioral Health Center (Northbrook).  The next hearing, which took place on September 12, 2017, is at the center of S.H.'s current appeal.  The entire hearing transcript is only two short pages long.

At the beginning of the hearing, S.H.'s attorney advised the trial court that "[t]his matter is contested" and that S.H. "asks for a discharge as soon as possible."  The attorney further stated that S.H. did not want to remain at Northbrook, where she could be evaluated for treatment on an outpatient basis through the IOC program.

The court criticized the attorney's position, stating that if S.H. was discharged, she would not be able to participate in the IOC program, which would "hurt" her.  The attorney replied, "Yeah, I certainly don't want to harm a client.  I just feel I have to let the [c]ourt know what she wants."  The court then stated that it was "going to continue the hospitalization for two weeks" and conduct the next hearing on September 26 where he would consider a "referral

9

to IOC." He also told the attorney that she could "send a letter to the [Administrative Office of the Courts (AOC)] in Trenton" because "[t]hat's who your issue is [sic]." The court filed an order later that day continuing S.H.'s commitment until the September 26 hearing, and stating that she "may not be discharged before the IOC hearing date." Significantly, the court made no finding by clear and convincing evidence that S.H. was in need of continued involuntary commitment to treatment by reason of a mental illness which caused her to be dangerous to herself, others, or property. R. 4:74-7(f)(1).

Other than having an attorney assigned to her, S.H. did not receive any of the required protections due to involuntary committees as provided by the statutes and court rules discussed above. No psychiatrist testified at the hearing, and no witnesses were sworn or cross-examined. S.H. was never given the opportunity to present any evidence.

The county asserts that the trial court had a report prepared by S.H.'s psychiatrist on September 8, but no report was marked into evidence or referenced in any fashion by the court.[3] The court did not make any findings of

---

[3] The county has also filed a supplemental appendix that includes one page from a "transcript of opening appearances and stipulations." The cover page of this document indicates that it is from a proceeding conducted on September 12, but does not list the name of any individual committee. Moreover, the court

fact supporting its conclusory ruling that S.H. should remain committed on an inpatient basis while she was evaluated for possible participation in the IOC program.

The court's cryptic reference to S.H.'s attorney having a problem with the AOC is not adequately explained anywhere in the record. Appellants assert that the court was referring to their disagreement with two informational memoranda issued by the AOC to all Assignment Judges on October 17, 2013, and July 24, 2017, concerning the use of an "Amended Temporary Order for Involuntary Commitment to Treatment of an Adult (Conversion from Involuntary Patient Commitment to Involuntary Outpatient Commitment)." Again, however, we cannot be certain if that is the case because neither memorandum was marked into evidence, or specifically identified for the record.

---

announces at the beginning of the transcript that "[i]t's September 17, 2017 for the Northbrook Hospital in Blackwood, New Jersey." Thus, we cannot be sure if this transcript has any connection to S.H.'s case, which was heard on September 12. After the court began the proceeding, the county's attorney stated, "Stipulations are the qualifications of the doctors, the admissibility of the medical report subject to cross-examination and a review period of [ninety] days." As noted above, the court never mentioned any report submitted in S.H.'s case, did not require the oral testimony of S.H.'s psychiatrist, and never permitted cross-examination.

11

On September 26, 2017, the court placed S.H. on Conditional Extension Pending Placement (CEPP), and her attorney has advised us that S.H. "was discharged before the next hearing date of October 17, 2017."

### B.     D.M.'s Hearing

On August 14, 2017, D.M. was temporarily committed on an inpatient basis at Northbrook. Like S.H., his commitment status was continued after an initial hearing, and the conduct of his subsequent, separate hearing on September 12, 2017 is also at the heart of D.M.'s present appeal.[4]

The transcript of this proceeding indicates that after a brief discussion between D.M.'s attorney and the court about whether a psychiatrist had actually prepared a report concerning D.M.,[5] an "unidentified speaker" stated on the record that there was a recommendation that for a "two-week referral to IOC."[6]

---

[4]  The same municipal court judge presided at both commitment hearings on September 12.

[5]  D.M.'s attorney argued that the report was prepared by a staff person rather than by the psychiatrist. The court stated it would rule on the objection at a later time, but that did not occur. As it did in S.H.'s case, the county has included a copy of a September 8, 2017 psychiatrist's report for D.M. in its appendix. However, this report was not marked into evidence or referred to by the court in its decision.

[6]  This recommendation is not adequately explained further in the record. We assume that the "unidentified speaker" suggested that D.M. be evaluated for

D.M.'s attorney objected, and asked that the "conditions" for D.M.'s release or his conversion to the IOC program "be established now."

As it did at S.H.'s hearing, the court criticized D.M.'s position, stating that if D.M. were discharged, he would not receive the benefits of possibly participating in the outpatient program. The court also stated that D.M.'s attorney's "complaint" was with the AOC, and suggested that the attorney write a letter to Trenton to voice his concern.

The county and the court then elicited the following testimony from the psychiatrist, without swearing in the psychiatrist on the record:

> [County counsel]: I'll skip over the preliminaries. Is it your opinion that [D.M.'s] currently unable to care for himself?
>
> [Psychiatrist]: He's had a repeated pattern of this and returning to the hospitals with rapid medication non-compliance in the community. And the IOC is a good solution. It was my understanding that this was all agreed to.
>
> The Court: Did you discuss that with [D.M.]?
>
> [Psychiatrist]: I did.
>
> The Court: Did he agree with it?
>
> [Psychiatrist]: Yes.

---

possible conversion to the IOC program, and that the next hearing be scheduled in two weeks.

A-0837-17T2

Based upon this meager testimony, and without giving D.M.'s attorney the opportunity to cross-examine the psychiatrist or produce any proofs of his own, the court held:

> I'm going to order the continued hospitalization for two weeks. I find that the Doctor's testimony is absolutely credible, convincing. And, he discussed this with [D.M.]. [D.M.] agreed. This is an issue that the Public Defender's Office has, which has no basis for this [c]ourt to consider. I don't care what that Public Defender's opinion is.

As was the case at S.H.'s hearing, the court failed to make any of the required findings to justify the continued commitment. The court did not find by clear and convincing evidence that D.M. had a mental illness which caused him to be dangerous to himself, others, or property, and that he needed further treatment.

The court's September 12 order provided that D.M.'s commitment was to continue, with the next review hearing scheduled for September 26. The order also stated: "Referral to IOC Program, Patient May Not Be Discharged Before IOC Hearing Date." At the September 26 hearing, the court converted D.M. to IOC, and required him to follow the IOC treatment plan.

A-0837-17T2

S.H. and D.M. have both appealed from the orders the court issued on September 12, 2017, continuing their commitments while they were evaluated for the IOC program.[7] Both appellants initially contend that "the trial court violated their substantive and procedural due process rights by refusing to allow [them] a hearing on [their] right to be free from involuntary inpatient and outpatient commitment." We agree.

We review the decision to continue an individual's civil commitment utilizing an abuse of discretion standard. D.C., 146 N.J. at 58-59. When reviewing civil commitment decisions, "we afford deference to the trial court's supportable findings." T.J., 401 N.J. Super. at 119. We "reverse[] only when

---

[7] As noted above, S.H. and D.M. have now received the relief they sought in terms of their individual commitment status. However, their challenges to the orders are not moot, and the county reasonably does not argue otherwise. "It is well settled in New Jersey that an appeal in these types of cases is not moot, even if the patient is no longer confined, when the patient remains liable for his or her hospital bill, and a finding in the patient's favor will entitle the patient to a credit for any period of illegal commitment." B.L., 346 N.J. Super. at 292. Moreover, were appellants' commitments to stand unchallenged, the September 12 orders could affect their future status if they are later recommitted. See N.J.S.A. 30:4-27.5(b) (stating that "[i]f a person has been admitted three times or has been an inpatient for [sixty] days at a short-term care facility during the preceding [twelve] months, consideration shall be given to not placing the person in a short-term care facility").

there is a clear error or mistake[.]" M.M., 384 N.J. Super. at 334.  However, we "must consider the adequacy of the evidence."  Ibid.

Applying these standards, we are constrained to conclude that the sparse record developed by the trial court simply did not support his finding that either appellant was in need of continued involuntary commitment.  In S.H.'s case, the court did not take any oral testimony from a psychiatrist, did not demonstrate that it reviewed any written expert report, and made none of the required findings by clear and convincing evidence that S.H. was is in need of continued involuntary commitment to treatment.  While a psychiatrist made a brief appearance at D.M.'s hearing, this expert was never sworn, no written report was entered in evidence, and the court did not permit cross-examination.  The court also failed to find by clear and convincing evidence that D.M. was in need of continued involuntary commitment to treatment.  Because no competent evidence was entered in either case to justify the court's decision to continue S.H.'s and D.M.'s commitments, the September 12 orders must be reversed.

In addition, the court did not scrupulously protect appellants' procedural due process rights as established by the governing statutes and court rules. Raymond S., 263 N.J. Super. at 432.  A psychiatrist only appeared in D.M.'s case, even though oral testimony by a psychiatrist is required at every

16

commitment hearing. The psychiatrist who briefly testified at D.M.'s hearing was not sworn in as a witness, and the court did not give D.M.'s attorney the opportunity to cross-examine this expert before abruptly ending the testimony. No expert reports were marked for identification or formally introduced in evidence. Although the record is not clear whether S.H. or D.M. were prepared to offer evidence of their own at their respective hearings, the court did not afford them the opportunity to do so. The court's conclusory findings in each case were insufficient to meet the requirements of Rule 1:7-4(a).

Under these circumstances, we reverse both of the September 12 orders.

IV.

Finally, we discern no basis for entertaining appellants' further argument that the AOC's October 17, 2013, and July 24, 2017 informational memoranda concerning the IOC program need to be invalidated or modified because they allegedly interfere with a patient's right to be converted to outpatient status or discharged. The September 12 orders have been reversed for the reasons we have detailed above and, therefore, there is simply no need to address further possible grounds to support our decision.

Indeed, "[t]he notion that a court of appeals . . . can decide issues unnecessary to the outcome of the case results in the wholesale issuance of

advisory opinions, a practice our judicial decision-making system categorically rejects." State v. Rose, 206 N.J. 141, 189 (2011).  We are not persuaded that this is a matter of significant public importance warranting our determination of abstract legal issues where there is no longer a controversy between the parties because the September 12 orders have been declared invalid.  See Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996) (noting that "[o]rdinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract").

We also decline to accept appellants' invitation to consider the substance of these memoranda because the record they developed before the trial court concerning the memoranda is plainly inadequate to permit a reasoned analysis of the issues they attempt to raise on appeal for the first time.  See Sente v. Mayor & Mun. Council of Clifton, 66 N.J. 204, 205 (1974) (dismissing appeal where the "record . . . [is] so unsatisfactory that we cannot be confident of reaching the correct result" on a novel and far-reaching constitutional issue); State v. Hughes, 230 N.J. Super. 223, 227 (App. Div. 1989) (noting "meager factual presentation" supported court's decision not to consider an issue on appeal).

A-0837-17T2

Here, appellants and the court discussed perceived issues with "the AOC" at both hearings. However, the October 17, 2013, and July 24, 2017 memoranda were never specifically identified by appellants to the court as the source of these concerns. Appellants did not mark or introduce either memorandum into evidence, did not present any oral argument outlining their specific positions concerning the documents, made no written motion objecting to the court's alleged reliance on the instructions set forth in the memoranda for the handling of IOC cases, and did not file motions for reconsideration that might have cured these deficiencies. The court also did not render a specific ruling on the vague concerns appellants expressed at the hearing, in contrast to the more detailed systematic arguments they now press on appeal, and merely advised appellants' attorneys to contact the AOC if they were not satisfied with his decision.

We generally decline to consider issues that were not adequately presented at trial. Nieder v. Royal Indem. Ins. Co. 62 N.J. 229, 234 (1973). As the Supreme Court has cogently explained:

> Appellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves. Although "[o]ur rules do not perpetuate mere ritual[,]" we have insisted that in opposing the admission of evidence, a litigant must "make known his position to the end that the trial court may consciously rule upon it." State v. Abbott,

36 N.J. 63, 76 (1961). This is so because "[t]he important fact is that the trial court was alerted to the basic problem[.]" Id. at 68. In short, the points of divergence developed in the proceedings before a trial court define the metes and bounds of appellate review.

[State v. Robinson, 200 N.J. 1, 19 (2009) (alterations in original).]

We will not depart from these well-established precedents here. In the October 17, 2013 memorandum, the AOC identified a problem that short-term care facilities (STCFs) were experiencing when patients became "clinically appropriate" for outpatient treatment prior to their next scheduled hearing. In those limited instances, the memorandum stated that the trial court could temporarily commit a patient in a STCF to the IOC through the issuance of a form temporary order that was appended to the memorandum.

The July 24, 2017 memorandum stated that judges were not properly using the form order. According to the memoranda, judges were incorrectly allowing parties to submit consent orders that did not contain the proofs necessary to establish that a conversion from inpatient to outpatient treatment should occur. Therefore, the memorandum advised the Assignment Judges to ensure that the trial judges in each vicinage complied with the governing standards in making their decisions.

We see nothing in these memoranda that prevented the trial judge in this case from considering a conversion request at the September 12 hearings, or granting it if all of the applicable requirements were met. However, nothing in the truncated record indicates that Northbridge's chief executive officer had sought to convert either appellant to outpatient treatment,[8] or completely discharge them from commitment either in advance of, or at, the September 12 hearing, and the court did not permit appellants to present such a case, assuming that they even intended to do so at that proceeding. In sum, the absence of a fully developed factual record and specific legal arguments raised before the trial court concerning the memoranda prevent us from more definitively addressing these documents in this opinion.

Contrary to appellants' arguments, whether the memoranda should remain in effect is not an issue that will likely recur without opportunity for adjudication. This is so because, in a future case, a party could readily prepare an appropriate motion in advance of the hearing that would give the trial court the opportunity to carefully consider the legal contentions raised, review the

---

[8] Rule 4:74-7(f)(3) sets forth the procedures that the chief executive officer of a psychiatric facility or hospital must follow when "apply[ing] to the court between the time periods for review of the commitment for an order changing the placement of the patient from an inpatient setting to an outpatient setting."

A-0837-17T2

specific documents that formed the basis for the motion, and make a reasoned determination on the basis of a fully developed factual record that would permit further appellate review.[9]   Because that did not occur here, we are unable to consider appellants' challenge to the memoranda.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] We note that the second memorandum was issued on July 24, 2017, less than two months before the September 12 hearings at issue here.  It is therefore possible that the court and the attorneys who regularly handle commitment matters were not fully familiar with the procedures discussed in the memoranda at that juncture.   Thus, rather than pursuing litigation concerning the memoranda, the concerns expressed by appellants for the first time on appeal might be able to be more satisfactorily addressed through additional training for judges and attorneys, or by further clarification of the purpose of the temporary order form through discussions by the Office of the Public Defender with the AOC.

22                                                    A-0837-17T2