THE STATE (CHARLES GRANT, PROSECUTOR,) *vs.* THE MAYOR AND COMMON COUNCIL OF NEWARK.

1. The act of March 20th, 1857, authorizing the common council of the city of Newark to appoint commissioners to lay out streets in said city, repeals so much of the act of the 11th of March, 1857, amending the charter of said city, as authorizes the council to lay out streets ; and an ordinance of the council laying out a street, passed after the passing of the act of the 20th of March, and before the appointment of commissioners, is without authority and void.

2. By the act of March 20th, 1857, the exclusive power to lay out streets in the city of Newark was vested in commissioners, to be appointed by the common council, and after the passage of that act the common council had no power to lay out a street. The power given by that act to appoint commissioners was not a discretionary one but was a power to be exercised for the public benefit.

3. Words of a statute, giving to a public body or officer power or permission to do an act which concerns the public interest, are to be construed as requiring the act to be done.

On *certiorari* in the matter of laying out a street in the city of Newark.

Argued before Justices OGDEN, VREDENBURGH, and WHELPLEY.

*C. Parker*, for plaintiff in *certiorari*.

*Runyon* and *Frelinghuysen*, for defendants.

VREDENBURGH, J. This is a *certiorari* bringing up the ordinance of the city of Newark laying out Halsey street. The ordinance was approved October the 23d, 1857.

The first reason assigned for declaring it void is, that at its date the common council of the city had no authority to lay out any street in the city of Newark.

The ordinance in question was passed under the authority of the act entitled, " An act to revise and amend the charter of the city of Newark," approved March the

11th, 1857, which provides that it shall be lawful for the common council to lay out and open any street within said city.

It is contended, by the prosecutor, that this section is repealed by the act approved March the 20th, 1857, passed nine days after the former. This last act provides that the common council of the city of Newark are hereby authorized to appoint five commissioners for the purpose of laying out streets, squares, and avenues in the city of Newark, and that the said commissioners shall have and possess *exclusive* power for that purpose, which powers and duties shall be exercised by the said commissioners within three years from the passing of said act.

It is contended that the conferring upon these commissioners this exclusive power, necessarily and at once repeals so much of the first act incorporating the city as gives to the common council the power to lay out streets; and this, I think, is manifestly the effect of the latter act and the intent of the legislature. The act of the 20th of March goes into effect immediately. It creates a new tribunal, and gives it, in terms, exclusive power over the whole subject matter of laying out streets in the city of Newark. But it is argued, by the defendants, that the act of the 20th of March only authorizes, but does not command, the council to appoint the commissioners, and that this street, although laid out by the common council after the last act went into effect, yet that the commissioners were not in fact appointed until after the ordinance laying out this street was passed, and that they continued to have power to lay out streets until after the commissioners were in fact appointed by them.

In the first place, to this it may be answered, that the appointment of the commissioners by the council was not optional with them. The language of the act of March the 20th is equivalent to a legislative command upon them to do it, and which they could have been compelled to perform. Their neglect to do it was a breach of public duty.

In the next place, whether the council could have been compelled to appoint the commissioners or not, it is perfectly manifest that the act of the 20th of March was, *quoad hoc*, a repeal of that of the 11th of March. By the act of March the 20th, the legislature created a new tribunal, with exclusive power to do the very thing which by the former act the council were authorized to do, and they thereby declared that such new tribunal should have the exclusive power. Now, whether the council saw fit ever to appoint the commissioners or not, the act of March 20th, *ipso facto*, took from them immediately the power to lay out streets. The legislature, in the last act, assumed that the council would appoint the commissioners cotemporaneously with the passage of the act, and acted upon that assumption, and gave to that tribunal, to be perfected by the action of the council, exclusive power to lay out streets at and from the passage of the act. The word exclusive, in the act of March the 20th, is as much a repeal of the power of the council to lay out streets as if the word repeal itself had been incorporated in the body of the act. When the act says that the said commissioners shall have the exclusive power to lay out streets, it is saying that they shall have such exclusive power from this time, and not from such time as the council shall see fit to appoint them.

That the legislature, by the act of March the 20th, intended to take from the council all power to lay out streets in the city of Newark, is also apparent from the whole scope and language of the act. Thus, in the 8th section, it provides that the commissioners, in laying out streets, shall have regard to the streets already laid out, to the end that uniformity may be produced, and the permanent interest of the city consulted in the laying out of the streets.

Again, it was manifestly the intent of this act to ascertain and settle where the future streets of the city should be located, and to quiet property owners as to the open-

ing and shutting up of streets for the time to come, so that that thriving city might grow up on some uniform and convenient plan, and not, as it had hitherto done, according to temporary or partial interest or accident. To effect these objects, it was absolutely necessary to intrust that duty to a single tribunal, and to take from the council and every other tribunal the power of continual alteration. The legislature accordingly created this tribunal of the commissioners, and gave them exclusive power over the laying out of streets, provided that they should perform their powers and duties within three years; that they should, within that time, lay out the future streets, avenues, and squares of the city according to their discretion, and close all streets, highways, lanes, and alleys which had not been duly surveyed and recorded as public streets, and to lay out the leading streets and principal avenues not less than sixty feet wide, and should lay out the streets, avenues, and squares so as to secure a free and abundant circulation of air when the same should be built upon, and should make a map of said city, showing the streets, avenues, and squares, and also the streets already laid out, exhibiting their connection, with field notes and elucidatory remarks, which they should sign and file in the proper offices, and should erect monuments at the angles, and take the elevation of the same above high water mark, and delineate them, together with the hills, valleys, and streams, on the said maps, so as to render the same explicit and intelligible. The act further provides that the maps, plans, and surveys of the said commissioners, so to be made by them, shall be final and conclusive, as well in respect to the city as to the owners and all other persons, from the filing of the maps. The act further provides that the said streets, avenues, and squares shall be opened, regulated, and converted to the use of the public as theretofore, and that, when so opened, the owners shall not be compensated in damages for any buildings put upon the said streets, avenues, and squares after the filing of said maps.

From all this it results that the legislature must have intended to take away from the council the power to lay out streets, and to leave them only the power to open and appropiate the streets, avenues, and squares laid down on said maps as they might deem the exigencies of the city required.

If the council, as was contended, have the power to lay out streets until the maps are filed, or even until the commissioners are appointed, how are the commissioners to make their maps, or to lay out streets, avenues, and squares? Their powers are only to lay down on their maps the streets, avenues, and squares already laid out at the time of the passing of the act, and not such as the council might lay out after and before they appointed the commissioners. If the council, after the passing of the act, should lay out any streets, there was no mode by which they could be got upon the maps of the commissioners, or be recognised in this general plan of the city. They would be subject to none of the actions of the commissioners, and, perhaps, mar the whole plan and beauty of the city? If the legislature had contemplated that the council might lay out streets after the passing of the act, they would have provided for the commissioners dealing with such streets as they were required to deal with all the other streets, and that the commissioners, in laying out streets, should have regard to them, as well as to those which had been laid out before the passage of the act.

The whole scope and object of the act of March 20th was to settle at once and for the future, by a scientific commission, the whole question of future streets, avenues, and squares in the territory included within the chartered bounds of the city. They created this tribunal for that express, and no other purpose, giving, however, to the council the power simply of nominating the commissioners. By the act, the whole power left in the council was this nomination. The power of laying out streets passed out of the

council *ipso facto* by the passage of the act. It could not be revested in them by their neglect in performing their duty in appointing the commissioners.

It results that this ordinance was passed entirely without authority, and is declared void.

WHELPLEY, J. This *certiorari* brings up an ordinance, passed by the defendants, laying out a street extending Halsey street, from its present southern termination, to Market street, opposite Harrison street, in the city of Newark. It was passed October 16th, 1857, and approved October 29th, in the same year.

Two reasons are relied upon for setting aside the ordinance.

1. That the defendants had no power to pass the ordinance, because they had now power at that time to lay out a street.

2. That a street had already been laid out by defendants for the same purpose, making the same connection by a resolution which is still unrepealed.

The 96th section of the charter of defendants, passed March 11th, 1857, confers full power to lay out streets by ordinance within said city. The defendants assumed to act under this section in laying out this street, but it is argued that this section is repealed or suspended by virtue of the provisions of an act entitled, an act authorizing the appointment of commissioners to lay out streets, avenues, and squares in the city of Newark, passed March 20th, 1857.

The first section of this act declares that the common council of the city of Newark are hereby authorized to appoint five commissioners for the purpose of performing the several acts and duties prescribed in this act; the second section, that the powers and duties of the said commissioners shall be exercised and discharged within three years after the passage of the act, and not after; the third section, that it shall be lawful for the said commis-

sioners, or a majority of them, and they shall have and possess the exclusive power to lay out streets, avenues, and public squares within the city of Newark, of such width, extent, and direction as to them shall seem most conducive to the public good.

The fourth section gives the usual power to enter on lands and make surveys, and requires them to make a map of the streets, avenues, and public squares so laid out by them, and of the other streets, avenues, and public squares already laid out in said city, and that the map shall be attested and filed in the city clerk's office as a record.

The seventh section enacts that the maps, plans, and surveys of the commissioners shall be final and conclusive, both upon the mayor and common council and the owners of lands within the city and all other persons, from the time of filing thereof.

The ninth section declares that the said streets, avenues, and public squares shall be opened and regulated, and converted to the use of the public, in the manner now designated by law, and in such other manner as the legislature may hereafter deem proper to enact.

The twelfth section enacts that no compensation shall be made for buildings and improvements made and erected upon the streets so laid out, after the filing of the map.

The common council did not appoint commissioners under the act until after the passage of the ordinance in question.

The legislature did not, by the act whose principal provisions have been just stated, design to confer upon the common council power to appoint these commissioners or not at their pleasure. The power was given to be exercised for the benefit of the public. Words giving power or permission to do an act which concerns the public interest, when applied to a public body or officers, are to be construed as requiring the act to be done, although the

phraseology of the statute be permissive merely, not peremptory, whenever there is nothing in the act save the permissive form of the expression, as may appoint, or shall have power to do so, to denote that the legislature designed to lodge a discretion in the body authorized to act. *Rex*. v. *Barlow*, 2 *Salk.* 609 ; *Attorney General* v. *Lock*, 3 *Atk.* 164 ; *Backwell's case*, 1 *Vern.* 152; *The King* v. *Derby, Skinner* 370 ; *The Mayor* v. *Furze*, 3 *Hill* 612, and the cases cited in the opinion of Nelson, C. J.

In *Rex* v. *Barlow*, the words of the statute were, " shall have power and authority to make a rate," referring to church wardens.

In the case of *Rex* v. *The Mayor of Hastings*, 1 *Dowl. & Ryland* 148, the act provided that the mayor, &c., " might for the future hereafter have and hold, and have power to have and hold, a court at some convenient place," it was held that this language was imperative, because the court was evidently intended for the benefit of the inhabitants, and was calculated to promote their benefit.

That case was like the present. The legislature evidently thought this mode of laying streets an improvement upon the old mode. It was to be a work done upon a plan taking in the whole city, and looking far into the future, not a thing of shreds and patches, done without system or forecast, to answer the exigencies of the moment. It could never have been intended to be left to the decision of the common council to create or not, at their pleasure, a board which was to deprive them of a large part of their powers.

It is not the habit of public bodies willingly to unclothe themselves of the powers they can retain.

Again, the commissioners were to do their work within three years after the passage of the act. This unmistakably indicates that the intent was that they should be appointed immediately, so that the work might be done at once, and the people might build and improve with reference to the plan to be adopted.

If the creation and appointment of the commissioners was obligatory upon the defendants, and I have no doubt it was, I am unable to perceive how a serious doubt can be entertained that, from the passage of the act, the exclusive power to lay out streets was lodged in the commissioners to be appointed and taken from the common council. It was designed that these commissioners should be immediately appointed, and should have exclusive powers. This mode of laying out streets was obviously designed as a substitute for that in the charter. The two powers could not be exercised by two different bodies over the same subject without inevitable conflict.

It seems hardly necessary to look into the act in detail to settle this question. The express words, that they should "have and possess exclusive powers," ought to settle the question, especially when it is so evident that the power could not be conveniently exercised by both.

But it was insisted that the act did not take away the power of the defendants to lay out streets until the map was filed, because, by the terms of that section, it was to be obligatory on the city at that time. No such inference can rationally be drawn from this circumstance. The act of the commissioners could bind nobody until done, and the act of laying out was to be by a map authenticated and filed. The argument amounts to this, that the commissioners were to have exclusive power to lay out streets, &c., not before they did the act, but afterwards.

By the act, their work was to be conclusive on everybody when done and the map filed, but the power to do the work was to be exclusively in them for three years after the passage of the act.

The act appears to have been carefully drawn. The power of laying out the streets is taken from the defendants, and given to the commissioners. The power to open them is left with the defendants.

If the power to lay out streets still remained with the defendants, and could be exercised by them until the maps

were filed, how could they ever be made? How could any plan of the future city be made and marked while another body was constantly engaged in altering the subject of the plan?

Beyond all doubt the power to lay out streets was taken from the common council, and given to the commissioners to be exercised within three years from the passage of the act.

The ordinance in question was void, and should be so declared.

OGDEN, J., concurred.

CITED *in Newark* ads. *State,* 3 *Vr.* 455; *State* v. *Kelly, Coll.,* 5 *Vr.* 78.