LAWRENCE FAGEN, APPELLANT AND PROSECUTOR BE-
LOW, v. MAYOR AND COUNCIL OF THE CITY OF
HOBOKEN ET AL., RESPONDENTS.

Submitted July 1, 1913—Decided November 17. 1913.

1.  The statute concerning the publication of municipal advertise-
    ments (*Comp. Stat., p.* 3767, § 24) declares "that it shall be law-
    ful" for the common council or governing body, with the consent
    of the mayor of any city of the second class, to designate by resolu-
    tion the official newspapers "in which shall be *solely* published" all
    municipal advertisements. *Held,* that a resolution directing the
    payment of a .bill to a newspaper not designated as an official
    newspaper in the manner required by the statute, did not consti-
    tute such newspaper one of the official newspapers in which shall
    be solely published "all official notices," and that payment for
    advertisements published in newspapers not official under the
    statute, cannot be made out of public funds.
2.  As this statute affects the public interests the words "shall be
    lawful" are mandatory, requiring the designation to be made in
    the manner provided therein, and the power of the common
    council and mayor to use public funds to pay for such municipal
    advertisements as are described in the statute is limited to news-
    papers designated as official newspapers in the statutory manner.

On appeal from the Supreme Court, whose opinion is re-
ported in 55 *Vroom* 226.

For the appellant, *Merritt Lane.*

For the respondents, *John Fallon.*

The opinion of the court was delivered by

BERGEN, J. This is an appeal from the judgment of the
Supreme Court dismissing a writ of *certiorari* allowed to re-
view certain resolutions passed by the common council of the
city of Hoboken authorizing payment to the Ivins Printing
and Publishing Company, for the publication of certain mu-
nicipal advertisements. The question involves the construc-
tion of a statute, entitled "An act in relation to city printing

and official advertisements in cities of the second class of this state," which provides: "That it shall be lawful for the common council, board of aldermen or other governing body, with the consent of the mayor, of any city of the second class in this state, to designate by resolution the official newspaper or newspapers published in any such city, in which shall be *solely* published all official notices, ordinances, advertisements, minutes and official proceedings relating to the municipal affairs of such city, and to fix a compensation to be paid by the city for the service rendered by such official newspaper or newspapers." All inconsistent laws are repealed. *Comp. Stat., p.* 3767, § 24.

Under this law the "Hoboken Observer" was appointed the official newspaper of the city of Hoboken, a city of the second class, no other newspaper being appointed in the manner required by the statute. Notwithstanding this appointment, the city clerk caused certain city advertisements to be published in a newspaper published by the Ivins Printing and Publishing Company, called the "New Inquirer." This company presented a bill for the cost of such advertising to the common council who ordered it paid by resolution, which was not approved by the mayor, although he subsequently signed the warrant for payment. The resolution for payment is assailed by the prosecutor upon the ground that the newspaper published by the Ivins Printing and Publishing Company was not a newspaper designated by the municipality for the publication of official advertisements, and therefore as such publications could not be authorized by the city clerk nor by the common council to be published in any newspaper other than that designated under the statute, the resolution for payment was illegal. The Supreme Court held the contention of the prosecutor to be unsound and affirmed the resolution. The opinion written for the Supreme Court declares that the object of the statute "was to give notice to those who might be interested in proceedings of the council relating to matters in which the public has an interest; and also to stop a pernicious practice which pre-

vailed, in that newspapers designated as legalized, without any authorization whatever would publish official notices, &c., and demand of the municipality payment for the same." With this statement of the purpose of the statute we agree, but we do not concur with the conclusion expressed by the Supreme Court "that the action of the mayor and common council in authorizing or ratifying a publication in an additional newspaper to the one contained in the resolution of 1903, is equivalent to the designation of an official newspaper," at least when the act of ratification is limited to a resolution authorizing the payment of a claim for advertising by a newspaper not designated in the manner required by the statute for the publication of official advertisements. The concrete deduction from the reasons given by the Supreme Court in support of its judgment is that, as there is no restriction of the number of official newspapers that may be appointed, the payment of charges made for advertisements not previously authorized amounts to an appointment of an official newspaper. This we consider unsound, for it will in effect induce the continuance of the pernicious practice condemned by the Supreme Court, contrary to the plain intent and object of the legislation, and beyond the power of the mayor or common council as limited thereby.

The act referred to provides "that it shall be lawful for the common council" to designate an official newspaper and, as this involves a public interest, the words "shall be lawful" must be interpreted as mandatory (*Central Land Co. v. Bayonne*, 27 *Vroom* 297), and in obedience to this mandatory provision the common council of the city of Hoboken designated the "Hoboken Observer" as the official newspaper, "in which shall be solely published" all official notices, and as they have designated no other newspaper in the manner required by the statute, that newspaper was the only one which could lawfully be authorized by the municipality to publish such advertisements as the city was required by law to publish. This being so, the doctrine of *Jersey City Supply Co. v. Jersey City*, 42 *Id.* 631, viz., that where the statute author-

izes a contract to be made by a corporate body in a certain mode which is intended to limit the power of such body, its officers and agents cannot bind it in any other manner, is applicable, and in our opinion the statute under consideration is a bar to the right of the common council, even with the approval of the mayor, to use the public funds to pay for advertisements published in any but the official newspaper. The mandate is to publish "solely" in the official newspaper, and to hold that an approval of a bill for printing amounts to the appointment of an official newspaper, would give the statute an effect not expressed in it, and permit the doing of that which the act manifestly was intended to prevent, namely, indiscriminate publications by newspapers, not officially appointed, with the hope and expectation, generally realized, that the common council would pay after publication.   The city clerk had no authority to order this publication, and it stands on no better basis than if it had been published without authority, and as the power of the common council to publish such notices is limited by the statute to the newspaper appointed according to its terms for that purpose, it could not ratify the unlawful act of its agent.   *Jersey City Supply Co.* v. *Jersey City, supra.*

The judgment of the Supreme Court will be reversed and the proceedings and resolutions brought up for review set aside.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, MINTURN, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ.   11.