THOMAS A. McDONALD, RESPONDENT, v. BOARD OF
CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON,
APPELLANT.

Argued June 21, 1923—Decided November 19, 1923.

1. Although the word "may" in a statute is often construed in a
   mandatory sense, especially in cases in which the public interest
   and rights are concerned, and where the public or third persons
   have a claim *de jure* that the power given shall be exercised, yet
   in its ordinary sense it is permissive; and in case of doubt
   resort should be had to the context as an aid to ascertain the
   legislative intent.
2. In section 25 of the Budget act (*Pamph. L.* 1917, *p.* 548, as
   amended in *Pamph. L.* 1919, *pp.* 371, 378), the words "may, by
   a vote of at least two-thirds of the members," *held* to be per-
   missive and not mandatory.

On appeal from the Supreme Court, whose opinion is re-
ported in 98 *N. J. L.* 386.

For the appellant, *John J. Fallon.*

For the respondent, *Robert H. McCarter.*

(*John O. Bigelow* also filed a brief in support of the
appeal as *amicus curiæ.*)

The opinion of the court was delivered by

PARKER, J.    This was an application for a writ of *man-
damus* to compel the appellant to make provision for pay-
ment to relator of his salary as "Superintendent of Elections"

in the county of Hudson, and the salaries of his subordinates. The office is created and the salary fixed by chapter 9 of the laws of 1923 (*Pamph L., p.* 26), whose title was amended by chapter 173 of the same year, page 460. That statute provides that such superintendent "shall receive a salary of five thousand dollars per annum, to be paid by the county treasurer." The act also provides that the superintendent may appoint certain assistants and fix their salaries and certify the same for payment, and that such salaries when so certified "shall be paid semi-monthly by the county treasurer" of the appropriate county. The Supreme Court, on rule to show cause, held relator entitled to a peremptory *mandamus,* but to preserve a right of review directed that an alternative writ and a record based thereon should be made up, as required by the practice in such cases. *Trinkle v. Donnelly,* 98 *N. J. L.* 298, and cases cited. This was promptly done, and the matter is before us on an alternative writ, return, demurrer thereto, and judgment sustaining the demurrer. As such demurrer opens the whole record, we consider here the legal sufficiency of the writ itself.

The Supreme Court held that certain irregularity in the entitling of chapters 9 and 173 of the laws of 1923, including the feature that the "act to regulate elections" of 1898, referred to in the titles of both chapters, had been superseded by the Revision of 1920 (*Pamph. L., p.* 615), did not invalidate the 1923 legislation, constitutionally or otherwise. With this phase of the case we find it unnecessary to deal, for reasons presently to be stated. The writ was further resisted upon the ground, as stated by the Supreme Court, "that the budget of 1923 does not contain an appropriation for the purpose of the bureau of elections, and that the statute in question" (*i. e.,* the legislation of 1923) "imposes no positive legal duty upon the defendant to make an appropriation to that end, but leaves the matter to be dealt with at the discretion of the board." This the court answered by saying that if there was no appropriation already made in that regard, and hence no fund out of which the salaries could be paid, nevertheless, under section 25 of the

"act concerning municipal and county finances" (*Pamph. L.* 1917, *p.* 548), as amended by chapter 178 of the laws of 1919 (*Pamph. L., pp.* 371, 378), it became the duty of the board to make an appropriation; holding that the words "may * * * make appropriations therefor" are mandatory.

Taken in its ordinary colloquial sense, the word "may" implies no mandate, but in certain classes of cases, especially where the public interest and rights are concerned, and where the public or third persons have a claim *de jure* that the right shall be exercised, it is construed as mandatory. *Seiple* v. *Elizabeth*, 27 *N. J. L.* 407; *Hugg* v. *Camden*, 39 *Id.* 620, 622; *Central Land Co.* v. *Bayonne*, 56 *Id.* 297, 300; *Fagen* v *Hoboken*, 85 *Id.* 297. But often, as in any ordinary case relating to the construction or interpretation of a statute, the context is determinative of the meaning, as for example, in *Kennelly* v. *Jersey City*, 57 *Id.* 293 (at *p.* 297), where in one section of a statute the word "may" was used twice, once in a mandatory, and again in a permissive sense. The contextual words "when they deem it proper" were properly held to limit the word "may" so as to make the contemplated action discretionary. Even the word "shall" is not necessarily mandatory in all cases. 36 *Cyc.* 1160, 1161; 35 *Id.* 1451; *Cairo and Fulton Railroad Co.* v. *Hecht*, 95 *U. S.* 168; *In re Rutledge*, 162 *N. Y.* 31. Both the relevancy and value of the context as an aid to interpretation were recognized in *Haythorn* v. *VanKeuren*, 79 *N. J. L.* 101 (at *p.* 105), in the Supreme Court, and in *Foley* v. *Orange*, 91 *Id.* 554, in this court.

Examining the statutes bearing on the present case in the light of these authorities, we note that the act of 1917, p. 548, sometimes called the "Budget act," requires the annual budget to be made out in advance, a specified number of days after the beginning of the fiscal year, and requires a specification of the various objects of appropriation, permitting an item of "Contingent Expenses" of not over three per cent. of the total; that money may be expended from "surplus revenue account" only on account of items scheduled in the

budget. It was conceded that the current budget included no provision for the superintendent of elections and his staff, and naturally not, because the act creating the office and sub-office or positions was not passed until after the budget was complete. So far, then, as the act of 1923, relating to the superintendent of elections, called upon the county treasurer to pay salaries, it was necessarily ineffective unless and until moneys lawfully applicable to them were in hand. And relator and the Supreme Court relied on section 25 of the Budget act as mandatory on the county to raise such moneys.

This section we proceed to examine. *Pamph. L.* 1919, at *p.* 378. It provides, in substance, that "upon the happening of any *emergency* caused by fire, flood, explosion, storm, epidemic, recovery of judgment, act of God or the public enemy," * * * or in case the revenues from liquor licenses fall short of the budget estimate by reason of legislation, &c., or for the costs of a special election, *"or for mandatory expenditures imposed by any statute approved subsequent to twenty days prior to the passage of the tax ordinance* * * * any * * * county being without funds to meet the necessities and the conditions created thereby, *may by vote of at least two-thirds of the members of the governing body* of such municipality or county make appropriations therefor and raise money to meet such appropriation by the issue of 'Emergency Notes' or 'Emergency Bonds'," &c. This is the action necessarily required by the mandate of the writ, that the county *"make provision* to pay the salaries of the said Thomas A. McDonald and those appointed under him as hereinabove specified."

The legislation above abstracted is an illuminating instance of the value and importance of context as a guide to ascertainment of the legislative intent. We are quite unable to perceive any reasonable ground on which it can be said that in cases of fire, flood, epidemic, &c., it is mandatory on the governing body to "make appropriations for the necessities and conditions thereby created." If mandatory, to what extent? Who is the judge of the amount? If deemed by anyone insufficient, can the Supreme Court be invoked to

ascertain the proper amount, and require the municipal body to raise it? To these questions there can be but one answer, viz., that it is all in the sound discretion of that body. But the act makes no distinction between such cases and unexpected shortage in revenues, new mandatory legislation, judgments, &c. And while the word "may," used at one place in a section, may have a different meaning from the same word in another place (*Kennelly* v. *Jersey City, supra*), we are not ready to give it in the present instance an alternative meaning according to the particular object specified.

But this is not all. The Supreme Court, in quoting the language of the section, omitted a clause which seems to us to have controlling effect. The language is: "Any municipality or county being without funds to meet the necessities and the conditions thereby created *may, by vote of at least two-thirds of the members* of the governing body," &c.

If the word "may" is mandatory, it is necessarily mandatory upon the governing body to raise the money by a two-thirds vote. But this leads to a palpable absurdity; for to what end is a two-thirds vote required unless the legislature meant, not merely to leave the emergency borrowing to the discretion of the governing body, but to limit even the discretionary action to that supported by two-thirds of that body?

We conclude, therefore, that the action contemplated by section 25 is discretionary and not mandatory; and no other lawful method of raising the needed funds short of their inclusion in the next budget being pointed out, the award of a peremptory writ in the form stated was erroneous, and the judgment under review must be reversed.

This conclusion renders it unnecessary, as already stated, to consider the other questions discussed in the court below.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ.   9.