BOARD OF HEALTH OF THE TOWNSHIP OF SCOTCH PLAINS, PLAINTIFF-RESPONDENT, v. JOHN PINTO, DEFENDANT-APPELLANT.

Argued October 13, 1970—Decided November 23, 1970.

*Mr. Harry Kay* argued the cause for defendant-appellant.

*Mr. James J. Walsh* argued the cause for plaintiff-respondent.

*Mr. Carlyle W. Crane,* argued the cause as *amicus curiae* on behalf of Plaintiff Area Cartmen's Association and other refuse collectors (*Messrs. Crane and Beglin,* attorneys; *Mr. Carlyle W. Crane* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendant John Pinto was convicted in municipal court of violating an ordinance of the Board of Health of the Township of Scotch Plains by increasing the rates of his garbage collection services without first obtaining approval of the Board. He was fined $100. The conviction was affirmed by the Union County Court and by the Appellate Division. 108 *N. J. Super.* 349 (1970). We granted defendant's petition for certification. 55 *N. J.* 597 (1970).

The facts are not disputed. The defendant is one of eleven licensed refuse collectors operating in the Township. The licenses were issued by the Board of Health which also approves rates at which collectors may bill individual homeowners. Defendant admits that he increased the charge for his services above the rates approved by the Board without first obtaining its approval and that his conduct violated the Board's ordinance. He has limited his defense to the question of the validity of the ordinance which he attacks on numerous grounds.

The critical sections of the ordinance require that refuse collectors be licensed by the Board, that the collectors file rates to be approved by the Board, that the rates cannot be increased without prior approval of the Board, and that any licensee who violates any provision of the ordinance shall be subject to a fine not exceeding $100. Other sections provide that there shall be no more than eleven licenses outstanding except in cases of emergency, that there shall be a biennial license fee of $100, that each licensee deposit a $1,000 bond to insure conformance with Board regulations, and that all licenses are subject to suspension and revocation for violation of Board regulations.

Defendant's primary argument is that the challenged provisions of the ordinance are *ultra vires* in that there is no statutory authority for the Board of Health to license and fix rates for the collection and disposal of refuse. In order to resolve this question, it is necessary to understand the

functions of local boards of health, and to decide whether the powers to license and fix rates are included in the powers delegated to them by the State.

Local boards of health are governmental agencies created in every municipality under statutory mandate, *N. J. S. A.* 26:3–1 *et seq.*, for the purpose of exercising locally the inherent police powers of the State respecting matters of public health. The boards are invested with both general and specific powers for dealing with problems of public health. *N. J. S. A.* 26:3–64 grants local boards the general power to "* * * enact and amend health ordinances, and make and alter necessary rules and regulations in the execution of any power delegated to it or in the performance of any duty imposed upon it by law * * *." See also *N. J. S. A.* 26:1A–9. *N. J. S. A.* 26:3–31 enumerates the specific powers delegated to local boards. Among the powers granted are two which are pertinent here:

"f. To regulate, control, and prohibit the accumulation of offal and any decaying or vegetable substance.

\*       \*       \*       \*       \*       \*       \*       \*

"h. To regulate, control, or prohibit * * * the dumping of garbage * * *."

The Board argues that the power to license collectors and fix collection rates are incidental to the specific powers granted in subsections (f) and (h). The argument requires an examination of the legislative scheme for allotting the various powers incident to the regulation of refuse collection.

The power to license and regulate rates inheres solely in the State and, in the absence of a statutory grant, does not exist in a municipal corporation or its local board of health. *Zullo v. Board of Health, Woodbridge Tp.,* 9 *N. J.* 431, 437 (1952); *Edwards v. Mayor, etc., of Borough of Moonachie,* 3 *N. J.* 17, 21 (1949). Thus, in order to sustain the ordinance before us, we must find a delegation of the power to license and set rates either by express language or by neces-

sary implication. There is no express power in subsections (f) and (h) either to license or set rates. By contrast the Legislature has specifically granted local boards of health the power to license certain other activities and businesses in the same section (*N. J. S. A.* 26:3–31) from which the plaintiff contends it derives its licensing power. Other subsections of that section expressly authorize local boards to license and regulate hotels and restaurants (c), plumbing (e), cleaning of cesspools and privies (i), and the keeping of boarding houses for children (1). These specific grants of licensing power and the absence of a specific power to license refuse collectors indicate to us that when the Legislature meant to authorize a local board to license a business or employment, it said so in express language. *Shoemaker & Co. v. Board of Health,* 82 *N. J. L.* 33 (Sup. Ct. 1911).

There are other indications that the Legislature never intended the Board to have a licensing power regarding the collection of refuse. *N. J. S. A.* 26:3–32 provides that local boards of health in cities having a population over 100,000 "may grant and regulate licenses and permits incident to health matters and charge a reasonable fee for any such license or permit." It is conceded that the Township of Scotch Plains has a population of less than 100,000 and thus the Board can draw no authority from this statute. To the contrary, the statute demonstrates a legislative intent to deny any such power to boards in less populous municipalities. Since there is no specific power to license refuse collectors and since the Board does not qualify for a general licensing power, it seems clear that the Legislature intended to deny it that power.

The denial of a local board's power to license refuse collectors was not an oversight by the Legislature. Although many functions of local boards of health overlap and may be exercised concurrently with those of municipal governing bodies, *e. g., Nicoulin v. Lowery,* 49 *N. J. L.* 391, 393 (Sup. Ct. 1807); see also *Township of Dover v. Witt,* 7 *N. J. Super.* 259, 261 (App. Div. 1950), some matters have been

delegated exclusively to municipal governing bodies. *N. J. S. A.* 40:52-1(c) provides that the governing body of a municipality "may make, amend, repeal, and enforce ordinances to license and regulate: * * * scavengers * * *." Accordingly, the Township governing body could have licensed the collectors in the present case. That the Legislature expressly delegated this power to municipal governing bodies and failed to mention it as a board of health power is further evidence of an intent to deny boards of health the power. The apparent statutory scheme in cities of a population of 100,000 or less is that the local governing body exercise exclusive control over licensing of refuse collectors, but that it share jurisdiction with the local board of health in regulating the accumulation, collection and dumping of refuse. *Cf. Township of Dover v. Witt, supra.*

What we have said above is consistent with *Zullo v. Board of Health, Woodbridge Tp., supra,* where this Court held that municipal governing bodies rather than local boards of health have the power to license and regulate the establishment of trailer camps. The local board of health's power was restricted to the regulation of standards by which the camps should operate. 9 *N. J., supra* at 440–441. The facts in *Zullo* were almost parallel to those before us with respect to a board of health's power to license. That the case dealt with trailer camps rather than refuse collection is not significant.

There is, however, one aspect present in this case which was absent in *Zullo.* There the licensing function did not involve the fixing of rates. In the present case the Board licensed the refuse collectors and approved the rates which could be charged homeowners. The Board evidently believed that it was necessary to have established rates in order to protect the public who would otherwise be at the mercy of the collectors. Activities which a board of health is empowered to license by statute such as hotels and plumbing do not involve monopolies. Rather, the citizens negotiate directly with the suppliers of services. But refuse collection

presents a different problem since the municipalities generally select the collectors. There must be some safeguard against collectors charging exorbitant rates. But merely setting or approving rates does not provide sufficient protection for the public interest. If the governing body of a municipality were to contract for the collection of refuse it could only do so through the use of public bidding. *N. J. S. A.* 40:66–4.[1] *McKim v. Village of South Orange,* 133 *N. J. L.* 470 (Sup. Ct. 1945); *Marangi Bros. v. Bd. of Com'rs. of Ridgewood,* 33 *N. J. Super.* 294 (App. Div. 1954). The purpose of bidding is to secure competition and to guard against favoritism, improvidence, extravagance and corruption. See, *e. g., Hillside Twp. v. Sternin,* 25 *N. J.* 317, 322 (1957). That there is no statute which specifically mandates local boards of health to employ the public bidding procedure in licensing collectors shows again that the Legislature intended that municipal governing bodies exercise exclusive control over the compensation to be received by refuse collectors. It must be remembered that the homeowners could not exercise a choice beyond the licensed collctors. Thus, those licensees held a monopoly over a segment of a public service which is vital to the public health. The Legislature has determined that the best method of protecting the homeowners is to compel municipalities to utilize public, competitive bidding. The problem is well demonstrated by the present case where the plaintiff concedes that public bidding was not employed by the Board. Surely the Legislature never intended to depart from the strong policies exhibited in our public bidding statute. Had it intended local boards of health to fix rates for the collection of refuse, it undoubtedly would have established clear bidding guidelines.

We conclude from the foregoing that the Board of Health was without power to issue licenses or regulate rates for the

---

[1] Any contract over $2,500 requires that the public bidding procedure be utilized. *N. J. S. A.* 40:66–4.

collection and disposal of refuse. In view of our holding on this point, we need not consider defendant's other contentions addressed to the validity of the ordinance. In addition, we reject plaintiff's contention that the case is moot in light of the enactment of new statutes dealing with the subject. See *N. J. S. A.* 48:2–13 as amended by *L.* 1970, *ch.* 40; the *Solid Waste Utility Control Act, N. J. S. A.* 48:13A–1 *et seq.*; the *Solid Waste Management Act, N. J. S. A.* 13:1E–1 *et seq.* These statutes which were enacted after defendant's conviction set forth a comprehensive scheme for dealing with the problems of solid waste collection and disposal. Without going into detail, one of the acts vests the power to set rates in the Board of Public Utility Commissioners. *N. J. S. A.* 48:13A–4. The statutes do not, however, moot the present case. The validity of the defendant's conviction cannot be resolved by the subsequent enactment of legislation.

We are not passing upon the question whether a homeowner could insist upon the prescribed rate for the period prior to the judicial determination in this case. We reserve the question whether licensees who accept and share in a monopoly, apparently created by an ordinance later found to be invalid, may refuse to abide by the stipulated rates prior to a judicial determination that the licensing provisions of the ordinance are invalid.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.