ARLETHIA JONES, PLAINTIFF-RESPONDENT, v. JAMES BUFORD, DIRECTOR OF HEALTH AND WELFARE, AS AGENT FOR ROY L. MANAGEMENT CORP., DEFENDANT-APPELLANT.

Argued February 9, 1976—Decided November 4, 1976.

434

Mr. *Anthony P. Ambrosio* argued the cause for appellant
(*Mr. Milton A. Buck,* attorney; *Ms. Zulima V. Farber* on
the brief).

*Mr. Stanley Varon* argued the cause for respondent.

*Mr. Kenneth Meiser,* Assistant Deputy Public Advocate, argued the cause for *amicus curiae* Department of the Public Advocate (*Mr. Stanley C. Van Ness,* Public Advocate, attorney; *Mr. Meiser, Mr. Carl S. Bisgaier* and *Mr. Peter A. Buchsbaum,* Assistant Deputy Public Advocates, on the brief).

The opinion of the court was delivered by

MOUNTAIN, J. Plaintiff, then a tenant residing in an apartment in Newark, commenced an action in lieu of prerogative writ to compel defendant, Director of the Newark Department of Health and Welfare, to act as statutory agent for her landlord, pursuant to *N. J. S. A.* 26:3–31(p).[1] She sought to have defendant, as such agent, hire repairmen and procure materials to repair the broken boiler in the building, in order to restore adequate heat to her apartment.

Some underlying facts should be stated. There is no doubt that the boiler in the building was broken and that plaintiff was receiving neither heat nor hot water. A repre-

---

[1] The local board of health shall have power to pass, alter or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction, for the following purposes:

\* \* \*

p. To act as the agent for a landlord in the engaging of repairmen and the ordering of any parts necessary to restore to operating condition the furnace, boiler or other equipment essential to the proper heating of any residential unit rented by said landlord, provided, however, that at least 24 hours have elapsed since the tenant has lodged a complaint with the local board of health, prior to which a bona fide attempt has been made by the tenant to notify the landlord of the failure of the heating equipment, and the landlord has failed to take appropriate action, and the outside air temperature is less than 55° F.

Any person who supplies material or services in accordance with this section shall bill the landlord directly and by filing a notice approved by the local board of health, with the county clerk, shall have a lien on the premises where the materials were used or services supplied. [*N. J. S. A.* 26:3–31(p)]

sentative of the landlord testified that he had engaged a man to do the necessary repair work but that its efficacy had been prevented by vandalism. He further stated that plaintiff was the only one of several tenants in the building who was paying rent and that he was financially unable to make further repairs. The accuracy of these representations was conceded by plaintiff's counsel. At some time prior to the filing of the petition for certification in this action, the municipal authorities declared the building unfit for human habitation and ordered it vacated. Plaintiff was relocated by the Newark Housing Authority at city expense pursuant to the Relocation Assistance Act, *N. J. S. A.* 20:4–1, *et seq.* Because of the inherent importance of the case and the apparent need for a dispositive determination of the issue presented, we have determined not to dismiss the action as moot.

The trial court decided it lacked power to afford the relief sought, and dismissed the complaint. The Appellate Division reversed, 132 *N. J. Super.* 209 (1975), and we granted defendant's petition for certification. 68 *N. J.* 151 (1975). We now reverse and reinstate the judgment of the trial court.

Local boards of health are governmental agencies created for the purpose of exercising locally the police powers of the State with respect to matters of public health. *Zullo v. Board of Health of Woodbridge Township,* 9 *N. J.* 431, 435 (1952); *Board of Health of Township of Scotch Plains v. Pinto,* 57 *N. J.* 212, 214 (1970). They derive their powers from State legislation. *Grosso v. Paterson,* 55 *N. J. Super.* 164, 171 (Law Div. 1959). Such legislation may take different forms. For present purposes statutes according powers to local boards of health may be thought of as being either enabling or self-executing. Enabling legislation, whether concerned with a board of health, a municipality or some other legislatively created entity, takes the form of a grant of an optional or elective power. The board of health, municipality or other entity is *enabled,* by the legislative grant, to avail itself of the particular power *if it chooses to do so.* The method of implementation, whether by

ordinance, resolution or otherwise, is sometimes specified in the enabling act. If so, it generally must be followed. If there is no specification, the subordinate entity will often have a choice of means. The point to be emphasized is that enabling legislation requires some appropriate form of action by the board of health or municipality before it can become effective; absent such action it has no local vitality. The point was well put by Justice (then Judge) Francis, speaking for the Appellate Division with respect to our zoning enabling act.

A municipality is a political subdivision of the State, owing its existence and the extent of its authority to the will of the Legislature. When functioning within the orbit of the statutorily delegated power generally its actions are legislative in character; and the decision to act by ordinance or otherwise in the area of local government is generally one of discretion, unless a particular performance is imposed as an imperative by the enabling statute. Thus, although the authority exists to adopt a zoning ordinance, the determination to do so or to refrain therefrom rests in the discretion of the governing body. Courts have no general supervisory power over the exercise of that discretion. The legislative branch of the government and its subdivisions acting within their constitutional and statutory sphere are just as independent of us as we are of them. Even if it could be said that a certain ordinance would be very much in the public interest and welfare, the courts will not issue their mandate to compel the legislative body to enact it; nor do we have the power to avoid the effects of inaction in that domain, as distinguished from the situation where there is an express or implied duty to act, [citing cases]. We cannot enter the committee room and interfere with or substitute our judgment for that of the governing body. [citing authorities] The remedy in such case must be with the electorate. Responsibility to a constituency and a sense of public duty are the only incentives which can prompt discretion in any legislative action. [*Finn v. Wayne Township*, 45 *N. J.* Super. 375, 379 (App. Div. 1957)]

Self-executing legislation, on the other hand, requires no act of implementation at the local level. The statute, *proprio vigore*, bestows a power, or in some cases an obligation, directly upon the local agency of government.

 Local boards of health possess broad *general* powers to enact ordinances and to make rules and regulations in

the interest of protecting and improving public health. *N. J. S. A.* 26:3-64. Additionally they are authorized, again by the enactment of ordinances and the adoption of rules and regulations, to address certain *particular* areas of concern in this field. The most important statute granting this latter power is *N. J. S. A.* 26:3-31, a subsection of which has been quoted above. This grant of power — to deal with specific problems identified in the statute — has been held not to limit the delegation of general powers as set forth in the former act. *Bd. of Health of Weehawken Twp. v. N. Y. Central R. R. Co.,* 4 *N. J.* 293, 299 (1950). Significant to the issue before us is the fact that with respect to each grant of power, the Legislature has chosen to employ enabling acts. In each case local action on the part of a board of health is needed to implement the legislative grant. Just as in the case cited above, *Finn v. Wayne Township,* it was found that a municipality might or might not, as it saw fit, adopt an ordinance pursuant to the zoning enabling act, so too, a local board of health may or may not adopt an ordinance specifically implementing any particular power made available to it by the Legislature. This result follows, in each case, from the language of the statutory grant.

In surveying legislation in the field of public health it will be seen that the Legislature has, from time to time, resorted both to the enabling and self-executing types of statute. For instance, with respect to the power to abate nuisances, although a board of health may, by ordinance, define what a nuisance is, *N. J. S. A.* 26:3-45, and provide means for its abatement, *N. J. S. A.* 26:3-46 *et seq.,* it is also empowered to act even in the absence of such implementing legislation at the local level.

> The power given to the local board to remove and abate nuisances, sources of foulness, or causes of sickness hazardous to the public health, shall not depend upon whether the board has exercised its power to pass, alter, or amend ordinances in relation to the public health. [*N. J. S. A.* 26:3-47]

Similarly, legislation providing for the adoption of a State Sanitary Code and directing that it be enforced by each local board of health, requires nothing at the local level for its activation. The obligation on the part of the local health authorities to see to its enforcement derives directly from the legislation giving the provisions of the State Sanitary Code the force and effect of law. *N. J. S. A.* 26:1A–9.

On the other hand, there is much legislation in the field of public health which is of the enabling variety. As we have indicated, the statute before us must be so classified. We repeat its opening clause:

> The local board of health shall have power *to pass, alter or amend ordinances and make rules and regulations* in regard to the public health within its jurisdiction, for the following purposes: [*N. J. S. A.* 26:3–31; emphasis added]

On its face the act is clearly of the enabling kind. The language is permissive and leaves full discretion with each board of health to enact ordinances or not, as it sees fit, with respect to any of the specific areas of concern detailed in the act.

We think it important, also, that this act not be read or considered in isolation, but rather in the framework of all housing legislation that seeks to give remedial relief to tenants against landlords who permit undue deterioration of buildings or who fail to provide satisfactory living conditions, as by neglecting to furnish adequate heat. Municipalities, for instance, have broad powers to cause dilapidated or dangerous structures to be repaired, closed or demolished, *N. J. S. A.* 40:48–2.3, and to take appropriate action upon a determination that a building is unfit for human habitation. *N. J. S. A.* 40:48–2.4 *et seq.* They may put the premises in proper condition at the expense of the owner, such public outlay to become a lien upon the property. *N. J. S. A.* 40:48–2.12f. Application may be made for the appointment of a receiver to collect the rents and apply them to the improvement of the property, *N. J. S. A.* 40:48–2.12h, *N. J.*

*S. A.* 2A:42–79; or to pay the rents into court, thereafter to be available to remedy the defective conditions. *N. J. S. A.* 2A:42–85 *et seq.* Municipal agencies may, under certain circumstances, relocate tenants, as was in fact done here with respect to this plaintiff. *N. J. S. A.* 20:4–1 *et seq.* At the state level, the Commissioner of the Department of Community Affairs, under the terms of the Hotel and Multiple Dwelling Law, *N. J. S. A.* 55:13A–1 *et seq.,* is specifically authorized to take appropriate action to insure adequate heat in multiple homes. *N. J. S. A.* 55:13A–7(h); *N. J. A. C.* 5:10–19.4(1). The panoply of remedies is ample, as indeed it should be. The diversity of options available strongly suggests a legislative intent that the selection of any particular statutory remedy should remain within the sound discretion of the municipal or other authorities.

Cases in other jurisdictions where similar legislation is in effect have construed such statutes as being permissive rather than mandatory, especially where, as here, the action seeks relief by way of mandamus. Thus in *Richmond v. Hayes,* 212 *Va.* 428, 184 *S. E.* 2d 784 (1971) suit was brought to compel a health officer to take action with respect to allegedly substandard housing pursuant to a statute which clearly authorized such relief. Finding the statute to be in all respects permissive, the court dismissed the suit. Similarly, in *Clear Vue Acres Homeowners Ass'n v. Commonwealth,* 13 *Pa. Cmwlth.* 66, 317 *A.* 2d 335 (1974) the court refused to issue a writ of mandamus to compel the State Department of Environmental Resources to assume the operation of a water company — potability of its water being allegedly below prescribed standards — despite the presence of a statute clearly authorizing such action. See also *Community Action Against Lead Poisoning v. Lyons,* 43 *A. D.* 2d 201, 350 *N. Y. S.* 2d 812 (App. Div. 1974); aff'd 36 *N. Y.* 2d 686, 366 *N. Y. S.* 2d 409, 325 *N. E.* 2d 870 (1975).

Here we conclude, as we have indicated, that the statute invoked by the plaintiff is enabling and not self-executing.

In the absence of appropriate municipal action it is not available as a remedy.

■ Finally, it should be noted that even were the statute so drawn as to be self-executing, local boards of health would still surely have discretion to decide whether the statutory remedy was appropriate in a particular case. It would be futile and improvident for a board of health to be compelled to repair the heating system of a building so generally dilapidated as to be beyond repair and to be unfit for human habitation.[2] A sensible solution, as was chosen here, would be to relocate the tenant.

For the reasons hereinabove set forth the judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

PASHMAN, J. (dissenting). This is a case of first impression concerning the construction of a recently-enacted section of *N. J. S. A.* 26:3–31. Subsection p. of that statute empowers local boards of health to act as agents for landlords to obtain necessary repairs when the heating equipment of an apartment fails to function and the outside temperature falls below 55°F.[1] Plaintiff-tenant sought to invoke this

---

[2]It has been estimated that the average cost of rehabilitation per dwelling unit in low income areas is $9,000. *President's Commission on Urban Housing, A Decent Home,* 101 (1968). The State Department of Community Affairs estimated that 44.6% of the dwelling units in Newark were substandard. *N. J. Dept. of Community Affairs, Crisis in New Jersey 1970,* 23 (1970).

[1]The introductory clause and subsection p. of *N. J. S. A.* 26:3–31 provide:
 The local board of health shall have power to pass, alter or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction, for the following purposes:
* * * * * * * *
 p. To act as the agent for a landlord in the engaging of repairmen and the ordering of any parts necessary to restore to operating condition the furnace, boiler or other equipment essential to the proper heating of any residential unit rented by said landlord, provided,

provision in order to have the heat and hot water in her apartment restored after the boiler in the building ceased operating. Although the Appellate Division upheld the tenant's rights under the statute, the majority today reaches a contrary result by means of a mechanical approach to statutory construction which defeats the promise and hope afforded by *N. J. S. A.* 26:3–31(p).

Plaintiff Arlethia Jones was a tenant of the Roy L. Management Corporation in an apartment building located at 448 Fairmount Avenue in Newark. On or about October 1, 1974, plaintiff notified the landlord that she was no longer receiving heat or hot water in her apartment. She also contacted the Division of Inspections of the Newark Department of Health and Welfare, which conducted an inspection of the building and determined that in fact the boiler was broken. The landlord was unwilling to make the necessary repairs because plaintiff was the only paying tenant in the apartment, the costs were prohibitive, and comparable repairs in the past had been frustrated by persistent vandalism.

Accordingly, on November 15, 1974, plaintiff commenced an action in lieu of prerogative writ to compel defendant-director of the Department of Health and Welfare to serve as statutory agent for the landlord, to hire repairmen and procure material to repair the boiler, pursuant to *N. J. S. A.* 26:3–31(p). Plaintiff contended that *N. J. S. A.* 26:3–31 (p) represents a mandatory authorization for the local

---

however, that at least 24 hours have elapsed since the tenant has lodged a complaint with the local board of health, prior to which a bona fide attempt has been made by the tenant to notify the landlord of the failure of the heating equipment, and the landlord has failed to take appropriate action, and the outside air temperature is less than 55° F.

Any person who supplies material or services in accordance with this section shall bill the landlord directly and by filing a notice approved by the local board of health, with the county clerk, shall have a lien on the premises where the materials were used or services supplied.

board of health to assume this responsibility. The trial court, concluding that it lacked jurisdiction to grant the relief sought, dismissed the complaint. The Appellate Division reversed in a reported opinion. *Jones v. Buford,* 132 *N. J. Super.* 209 (App. Div. 1975). Reading provisions of the Faulkner Act, *N. J. S. A.* 40:69A-1 *et seq.* and *N. J. S. A.* 26:3-31, *in pari materia,* the Appellate Division found that the Newark Department of Health and Welfare, as a "local board of health," was subject to the latter statute. The court then held that the power conferred by the provision was administrative in nature and imposed a mandatory duty on defendant to pursue plaintiff's interests in obtaining sufficient heat and hot water. In construing the statute, the court stated:

> It is apparent from the nature and scope of the legislation that the Legislature intended that the members of the residential renting public, for whose protection the statute was enacted, should have the right to have the power thus conferred, exercised for their benefit.
> [132 *N. J. Super.* at 215]

On January 14, 1975, the day after oral argument in the Appellate Division, the Newark Division of Inspection declared the apartment building to be unfit for human habitation. Pursuant to the Division's vacation order, and the Relocation Assistance Act, *N. J. S. A.* 20:4-1 *et seq.,* plaintiff was moved to a different apartment building by the Newark Housing Authority. Because of the importance of the question posed by this case, we declined to dismiss the action as moot and granted defendant's petition for certification. 68 *N. J.* 151 (1975).

## I

The majority rejects the Appellate Division's statutory construction of *N. J. S. A.* 26:3-31(p). The majority reads the introductory clause of the statute to find, in the absence of any definitive legislative history, that this legislation is "of the enabling variety." Enabling legislation, as opposed

to that which is unitary and self-executing, requires regulatory implementation before it becomes effective. Because such implementation is a function vested in the sound discretion of municipal authorities and their agents, courts cannot compel local enactment. For this reason, the majority holds that, by its failure to promulgate regulations for *N. J. S. A.* 26:3–31(p), the Newark Department of Health and Welfare has precluded plaintiff from resorting to the statutory remedy afforded by this statute.

My disagreement with the majority originates from its erroneous statutory construction of *N. J. S. A.* 26:3–31(p), and the unfortunate consequences resulting from that interpretation. Significantly, the use of the word "shall," in the introductory clause of a statute, such as *N. J. S. A.* 26:3–31(p), usually indicates a mandatory rather than permissive obligation. As Justice Schettino observed in *Harvey v. Essex Cty. Bd. of Freeholders,* 30 *N. J.* 381 (1959):

> The word "may" is ordinarily permissive or directory, and the words "must" and "shall" are generally mandatory. Such terms, however, have been held to be interchangeable whenever necessary to execute the clear intent of the Legislature. The problem is primarily one of ascertaining the intent of the Legislature.
>
> [30 *N. J.* at 391–392].

*Accord, City of Passaic v. Passaic Cty. Bd. of Taxation,* 18 *N. J.* 371, 395–96 (1955); *Leeds v. Harrison,* 9 *N. J.* 202, 213 (1952). Thus, contrary to the majority, I perceive that this statute creates a mandatory obligation on its face.

This construction becomes more compelling when, as here, we consider a statute which confers a substantial benefit upon members of the public. In such provisions, to avoid negation or denial of an important benefit, courts ordinarily construe legislation to impose a mandatory obligation on the responsible governmental body to effectuate the legislative scheme in the absence of an express contrary intent. As one leading commentary on the subject states:

A grant of power to public officers, where individuals or the public have a right that it be exercised for their benefit, is mandatory. [2A *Sutherland, Statutory Construction* (4 ed. 1973), § 57.17 at 441]

Recognizing the important interests served by this rule of construction, courts have applied the rule in a broad and liberal fashion. Thus, to avoid the deprivation of a statutory benefit, courts have found a mandatory obligation to implement legislation even where the language of a statute is arguably permissive. As early as 1860, the former Supreme Court observed:

Words giving power or *permission to do an act which concerns the public interest*, when applied to a public body or officers, are to be construed as requiring the act to be done, although the phraseology of the statute be permissive merely, not peremptory, whenever there is nothing in the act save the permissive form of the expression, as may appoint, or *shall have power to do so*, to denote that the legislature designed to lodge a discretion in the body authorized to act. [*State v. Newark*, 28 N. J. L. 491, 497–98 (Sup. Ct. 1860); emphasis supplied].

An extensive line of cases following this precedent has almost uniformly adhered to this basic rule of construction. *See Central Land Co. v. Bayonne*, 56 N. J. L. 297, 300 (E. & A. 1893); *Kennelly v. Jersey City*, 57 N. J. L. 293, 297 (Sup. Ct. 1894); *Clark v. Elizabeth*, 61 N. J. L. 565, 581–82 (E. & A. 1898); *Fagen v. Hoboken*, 85 N. J. L. 297, 299 (E. & A. 1913); *McDonald v. Hudson Cty. Bd. of Chosen Freeholders*, 99 N. J. L. 170, 172 (E. & A. 1923); *Leeds v. Harrison, supra,* 9 N. J. at 213; *Harvey v. Essex Cty. Bd. of Freeholders, supra,* 30 N. J. at 392; *Como Farms, Inc. v. Foran*, 6 N. J. Super. 306, 311 (App. Div. 1950); *Bayonne v. North Jersey Dist. Water Supply Comm'n*, 30 N. J. Super. 409, 417–18 (App. Div. 1954). Furthermore, the "substantial" interests upheld in these cases, such as the duty of a municipality to publish solely in an official newspaper, *Fagen v. Hoboken, supra,* and the power of a municipality to retire court attendants who reach the age of 65, *Harvey*

*v. Essex Cty. Bd. of Freeholders, supra,* pale in comparison with plaintiff's interest in this case — the provision of sufficient heat during cold weather.

The majority bases its decision largely on the proposition that the intent of the legislature in enacting a statute should prevail, regardless of precedents and rules of statutory construction to the contrary. *Sutherland, supra,* § 45.05 at 15; *Malawan v. Monmouth Cty. Bd. of Taxation,* 51 *N. J.* 291, 298 (1968); *Union Cty. Bd. of Freeholders v. Union Cty. Park Comm'n,* 41 *N. J.* 333, 337 (1964). However, the piecemeal fashion in which this statutory scheme was adopted undermines the inquiry undertaken by the majority to delineate the legislative intent. *N. J. S. A.* 26:3–31 itself is the product of at least 12 separate pieces of legislation which were enacted over a 91-year period. Any effort to discern a consistent or readily ascertainable intent on the part of the Legislature in adopting the different subsections of this statute runs into formidable obstacles of interpretation which are blithely ignored. Furthermore, although the majority concludes that the Legislature has chosen to delegate power to local boards of health through enabling acts, *ante* at 438, it freely admits that in "surveying the field of public health it will be seen that the Legislature has, from time to time, resorted both to the enabling and self-executing types of statutes." *Ante* at 438.

Transcending this inquiry, additional factors undermine the majority's conclusion that the statute is not self-executing. It is clear that the Legislature enacted this provision to afford the tenant practical relief from the health hazards and discomforts of an unheated apartment. I disagree with the majority's suggestion that the availability of other remedial options to local boards of health is in any way probative of the discretion vested in municipal authorities. The issue is whether the local board must implement the statute, thereby entitling the tenant to have the heating system in this building repaired if the landlord has failed to take appropriate action, and not whether it must exercise the option

provided by the statute under the facts of this particular case. *See* Part II, *infra.*

Moreover, on its face, *N. J. S. A.* 26:3–31 neither requires further implementation, nor indicates that its time of effectiveness is to be postponed until such implementation is accomplished. If anything, this suggests an intent contrary to that found by the majority. *See* 2 *Sutherland, supra,* § 33.06 at 9. A close examination of *N. J. S. A.* 26:3–31(p) also shows that it affords sufficiently detailed guidance to obviate the need for any implementing legislation. The statute clearly specifies the object of the legislation ("to restore to operating condition the furnace, boiler or other equipment essential to the proper heating of any residential unit rented by said landlord"), its subject ("local board of health"), the powers which are conferred by the statute ("To act as the agent for a landlord in the engaging of repairmen and the ordering of any parts necessary to restore . . . equipment essential to the proper heating"), who may invoke those powers ("the tenant"), when the powers may be invoked ("24 hours . . . [after] the tenant has lodged a complaint with the local board of health") and the conditions which must be met prior to invoking the powers ("a bona fide attempt has been made by the tenant to notify the landlord of the failure of the heating equipment, . . . the landlord has failed to take appropriate action, and the outside air temperature is less than 55° F."). These provisions and the absence of any indication that further implemention was either contemplated or necessary, warrant the conclusion that *N. J. S. A.* 26:3–31(p) is self-sufficient and requires no further implementation.

I am not persuaded that the introductory clause of the statute requires a different conclusion. That section provides that the "local board of health shall have power to pass, alter or amend ordinances and make rules and regulations in regard to the public health." Once it is recognized that the statute is self-executing, it is clear that the statement refers to the ability of the local board of health to pass rules

and regulations concerning powers which it is granted under the statute. This corresponds to the quasi-legislative authority which belongs to administrative agencies to promulgate interpretative rules. *See generally,* 1 *Davis, Administrative Law,* § 5.03 (1958); *Cunningham v. Dep't of Civil Service,* 69 *N. J.* 13 (1975). Although the clause leaves the promulgation of such rules to agency discretion, it does not suggest that this power may be used to neutralize the efficacy of the statute as a whole. In fact, to the extent that the statute is sufficiently clear in this case, the necessity for additional legislation is thereby ameliorated. Reference to the quasi-legislative powers of the local boards of health only acts as an invitation to use these powers *if necessary* at a later time. I therefore find that *N. J. S. A.* 26:3–31 is a self-executing statute, and that subsection (p) is both operative and available despite the failure or reluctance of the local board of health to enact supplementary regulations. By virtue of the express terms of the statute, I would further find that Ms. Jones was entitled *to invoke* the terms of relief provided by the Legislature under *N. J. S. A.* 26:3–31(p).

## II

The majority finds that the municipality has not availed itself of the statutory scheme by implementing regulations, treating only in *dictum* the question whether a tenant has a right to have the power inherent in *N. J. S. A.* 26:3–31 exercised in this case. Because I find the statute to be self-executing, I now address this issue.

Preliminarily, I reiterate that the right which is afforded to the tenant under the statute is merely the right to file a complaint with the local board of health and thereby invoke the powers enumerated in subsection p. However, it is my belief that *enforcement* of the remedy under *N. J. S. A.* 26:3–31(p) is, and should be, entrusted to the sound discretion of the local board of health. This is in accordance with the best interests of fairness and administrative practicalities. While the remedy provided in *N. J. S. A.* 26:3–31(p) should

be readily accessible to tenants who are deprived of heating, its administrative enforcement should be based upon a factual determination of need. Situations are conceivable where a tenant might unjustifiably file a complaint with the local board of health, invoking *N. J. S. A.* 26:3–31(p) as a means of harassment or oppression. Once it is determined that factual allegations are unfounded, it would be proper for the local board to decline to exercise its discretion. Such an action should only be undertaken, however, as an exercise of sound discretion consistent with the purposes of the underlying legislation. *See Swede v. Clifton,* 22 *N. J.* 303 (1956). Furthermore, to avoid arbitrary administrative determinations and also to provide a record for judicial review, the reasons for the decision of the local board of health should be reduced to writing. *See Monks v. N. J. State Parole Bd.,* 58 *N. J.* 238, 249 (1971); *Donaldson v. N. Wildwood Bd. of Educ.,* 65 *N. J.* 236, 245 (1974).

Of course, within the context of the instant case, a determination of this sort is unnecessary because Ms. Jones no longer lives at 448 Fairmount Avenue and the apartment building in which she formerly resided has been condemned. However, even if the apartment house had not been condemned, it is possible that the Department of Health and Welfare, in its sound discretion, might have lawfully declined to grant relief. The building required extensive and expensive repairs beyond the mere replacement of a boiler. Consequently, it is possible that the desired repair work would have been totally ineffective. Under these circumstances, the Department should be able to seek other forms of relief such as the condemnation and relocation actually effected in this case.

The majority fails to fully implement an important statutory provision. Its refusal to provide procedures for relief in this case stands in stark contrast to the decisions of an increasing number of courts which have recognized the deprivation suffered by the poorer segments of our society with regard to the basic amenities of human existence.

These amenities, though not of constitutional dimension, have been regarded as essential to the general welfare, and have prompted both federal and state courts to strike down procedural obstacles which unduly restrict access to them. *Goldberg v. Kelly,* 397 *U. S.* 254, 90 *S. Ct.* 1011, 25 *L. Ed.* 2d 287 (1970); *Wolff v. McDonnell,* 418 *U. S.* 539, 94 *S. Ct.* 2963, 41 *L. Ed.* 2d 935 (1974); *Avant v. Clifford,* 67 *N. J.* 496, 519 (1975). Foremost among these necessities is shelter. In *N. J. Mortgage Finance Agency v. McCrane,* 56 *N. J.* 414 (1970), this Court specifically stated:

> The question of whether a citizenry has adequate and sufficient housing is certainly one of the prime considerations in assessing the general health and welfare of that body. [56 *N. J.* at 420].

Subsequent cases have reaffirmed this proposition. *Robinson v. Cahill,* 62 *N. J.* 473, 483 (1973); *Southern Burlington Cty. NAACP v. Mt. Laurel Tp.,* 67 *N. J.* 151, 178–79 (1975).

Shelter anticipates something more than the mere provision of four walls and a roof. It clearly contemplates, as we stated in *McCrane,* housing which is both "adequate" and "sufficient." In this regard, housing which lacks heating when the temperature drops below 55° F. does not comport with the "adequate" and "sufficient" standards which we previously enunciated.

The majority today permits the local authorities in Newark to effectively shirk their statutory responsibility to effect these standards until such time as those authorities decide to implement what I find to be an already clear legislative mandate. I refuse to stand back while the local authorities fiddle and Ms. Jones freezes. Consequently, I would affirm the decision of the Appellate Division.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD— 6.

*For affirmance*—Justice PASHMAN—1.